223 So.2d 613 (1969)
ENGLE ACOUSTIC & TILE, INC., Rebel Roofing & Metal Company, and Modern Seamless Floors, Inc., Appellants,
v.
Drs. Raymond GRENFELL, James H. Melvin, Thomas J. Marland; and Alton B. Clingan, Jr., Appellees.
No. 45306.
Supreme Court of Mississippi.
June 2, 1969.
*614 Cox, Dunn & Clark, Jackson, for appellants.
Dale Danks, Jr., Bacon & Smith, Young, Young & Scanlon, Jackson, for appellees.
PATTERSON, Justice:
This is an appeal from the Chancery Court of the First Judicial District of Hinds County wherein the appellants, subcontractors, were denied relief on monetary claims they propounded against the appellees.
This appeal combines pleadings in three separate actions which originally involved claims by more than twenty subcontractors and materialmen against three property owners, a contracting firm, an architect, a bank, the bank's trustee, and a title insurance company.
Five of the subcontractor claimants prosecuted this appeal, two of whom have since dismissed their appeals, leaving only three appellants, fourteen volumes embracing 2,215 pages of the record, numerous exhibits, nineteen assignments of error, and the briefs of the remaining parties to be considered by the Court. The foregoing statement is made so that the attorneys and parties interested will realize that the Court of necessity must reduce this maze of material to minimum facts and principles of law with the hope that the same will be understandable.
The parties will be referred to as follows: Drs. Melvin, Marland, and Grenfell, appellees, collectively as "the Owners"; Fran Builders, a partnership composed of Guy Lowe, Jr. and Hudson Turner, the prime contractor, as "Fran"; Alton B. Clingan, Jr. & Associates, the architects, also appellees, as "Clingan"; the Deposit Guaranty National Bank as "the Bank"; Engle Acoustic & Tile, Inc., appellant, as "Engle"; Rebel Roofing & Metal Company, appellant, as "Rebel"; and Modern Seamless Floors, appellant, as "Modern Floors."
After preliminary discussions with Guy Lowe, Jr. and Clingan, the Owners on November 23, 1965, entered into a contract with Fran for the construction of a multistory office building in the city of Jackson. This agreement embodied the general construction conditions, plans and specifications as prepared by Clingan. The construction contract was on a cost plus fixed percentage basis. The following day the Owners entered into a contract with Clingan for architectural services in connection with the construction of the building. Although the Owners were advised by Clingan to require a performance bond of Fran, this advice, after consideration, was rejected.
Thereafter, Fran began the performance of its contract by engaging in the construction of the building. This required Fran to enter into numerous subcontracts with other firms for specialized work necessary to the building. Engle, Rebel, and Modern Floors belong to this class.
On May 23, 1966, Engle entered into a contract with Fran to furnish and install dry wall partitions and acoustic tile ceilings in the building. This agreement referred to Fran as the general contractor *615 and Engle as the subcontractor. The Owners are not parties thereto. Engle's claim against the Owners and Clingan is for an unpaid balance of $19,499.68.
On April 26, 1966, Rebel entered into its contract with Fran for the roofing and sheet metal work. It also refers to Fran as the general contractor and Rebel as the subcontractor. The Owners are not mentioned as parties to this contract. Rebel's claim against the Owners and Clingan for labor and materials is $719.63.
On May 3, 1966, Modern Floors entered into a contract with Fran to furnish and install Torginol floor and wall covering, etc., in the building. This contract also refers to Fran as the general contractor and Modern Floors as the subcontractor. Again the Owners are not designated as parties to the contract. Modern Floors claims a balance due it of $3,869.
From December 1, 1965, through August 1, 1966, as the building progressed, Fran made nine applications for payment for labor and materials furnished. Each of the applications for payment was submitted to Clingan, the architect, and each was certified by him to the Owners as ready for payment. The Owners issued their checks to Fran in payment of the first two applications. Thereafter, so that the title insurance coverage would include subsequent advances by the Bank to the Owners under its deed of trust, Fran submitted the remaining applications to the Title Company subsequent to certification by Clingan. The Title Company in turn, after checking the records to ascertain that no materialmen's or laborers' liens had been filed during the course of the remaining progress payments, certified the applications to the Bank which then issued its joint checks to the Owners and Fran. The Owners indorsed these checks and the proceeds were deposited by Fran to its account.
About the end of August 1966 it became apparent that Fran had not paid all laborers and materialmen involved in the construction of the building. Thereafter, with the possible exception of Engle, the construction work ceased and Fran was declared a bankrupt. The evidence reflects that none of the appellants had filed notice of nonpayment of their claims (commonly called a stop notice) under the provisions of Mississippi Code 1942 Annotated section 372 (1956), until after the Owners had paid Fran in full under its ninth and last application for payment.
The appellants contend that the Owners are liable to them for the unpaid balances due for work done and materials furnished on the building. In support of this contention they urge liability under the following theories:
First, they insist that the general contract arrangements for the construction of the building created mutually interdependent rights and obligations between the Owners and the subcontractors; secondly, they argue that the Owners made Fran their agent to enter into the contracts for the specialized work necessary to the building, and therefore they are directly liable; thirdly, they assert that as between the Owners and the subcontractors the former must bear the loss caused by the malfeasance of Fran since they were in the best position to have prevented the loss from occurring.
Engle also contends individually that the Owners are liable to it for labor performed during the month of August 1966. Fran averred in this regard that the work was performed subsequent to the last payment to Fran and since they have never been billed therefor and since the labor was necessary to the building, it would be inequitable and unjust enrichment for the Owners to retain the benefit of Engle's labor without compensation.
Finally, it is contended by the appellants that Clingan is liable to them due to his negligence in failing to prepare and disseminate an addendum or change order modifying the requirements of the contract for a performance bond and retainage of 10% of progress payments as the contract *616 originally required. Also, they allege that Clingan is liable to them as the result of his negligence in certifying Fran's inaccurate and dishonest applications for payment, but for which the appellants would have had resort to the funds for their accounts.
The Owners' defense is that they had made full payment under the contract to Fran prior to notice of its default; that since the appellants had given no "stop notices" as required by Mississippi Code 1942 Annotated section 372 (1956), there can be no liability as to them. They also deny that Fran was their agent and insist that the relationship with it was by the contract which made Fran an independent contractor.
Clingan denied negligence in approving the applications for payments and contends that he owed no contractual duty to the appellants as his contract was with the Owners.
The chancellor found in classic language the following:
All the parties to these suits evidently had the utmost confidence in Guy Lowe, Jr., as an individual and as a building contractor. His honesty and integrity had never been questioned and his financial status was considered to be good. There seems to have been an abundance of trust and a scarcity of caution on the part of the subcontractors and the materialmen. * * * As contemplated by the said agreement after the property was acquired and loan commitments were issued, a construction contract was made by the said three doctors with the contractor. (Exhibit "C-10") This contract was to govern the relationships between the doctors and the partnership from that date forward. It was under the terms and provisions of this agreement the building in question was constructed. * * *
It is further found as a fact that all those claiming liens in any of the three cases here consolidated dealt directly with Guy Lowe, Jr., and Hudson Turner, doing business as Fran Builders. * * * All invoices and statements of the various materialmen and sub-contractors are directed to the partnership, Fran Builders and Suppliers. * * * Said partnership * * * is not entitled to any further payment from the said Doctors Grenfell, Melvin and Marland. * * *
The claimants did not meet the burden of proof as alleged that the three Doctors as owners were indebted to the prime contractor, the partnership, at the time of service of any stop notices upon said Doctors * * *.
A final decree was entered in accord with the findings of the chancellor, a portion of which is as follows:
That none of the lien claimants herein had any contractual dealings or relationships with the said owners of said lands; and
4. That the said owners of said land had no indebtedness to Guy Lowe and Hudson Turner, d/b/a Fran Builders or to Fran Builders, Inc., at the time of the service of any stop notices by any of the claimants in this litigation nor have said owners had such indebtedness since the time of service of any such stop notices.
The contentions of the subcontractors asserted in the court below, and outlined above, will be considered as the assignments of error on appeal as they encompass the full spectrum of the nineteen errors assigned by appellants.
In support of their point that the prime contract created mutually interdependent rights and obligations between the Owners and the subcontractors, the appellants cite State for Use of National Surety Corporation v. Malvaney, 221 Miss. 190, 72 So.2d 424, 43 A.L.R.2d 1212 (1954), which did hold an architect liable for negligently permitting the premature release of retainage funds. It also held the superintendent of education and his bondsman liable for their *617 unauthorized act in issuing a certificate of payment without prior approval of the board of trustees. The chancellor considered this case and specifically rejected it as controlling in the present case. We are of the opinion that he was correct in so doing since Malvaney is a case involving a contract for the benefit of the public and one in which a performance bond was required by law. This requirement became a part of the contract by operation of law between the owners, the prime contractor, and the architect. The Court there held:
* * * It is argued by the appellee, however, that the architect, Malvaney, owed no duty to the surety either under the contract or otherwise, with respect to the retainage funds. We think he did. Under the provisions of Section 9014 of the Mississippi Code of 1942, the contractor was required to furnish bond not only for the completion of the building, but with the additional obligation that he would make prompt payments to all persons supplying labor and materials for the job. Such additional obligation is required to be read into the bond whether the bond expressly so provides or not. * * *
* * * * * *
The contractual arrangement here consisted of the building contract, including the plans and specifications, and the bond which incorporated the contract as a part thereof, with the mutually interdependent obligations and rights therein contained. * * * 221 Miss. at 208-209, 72 So.2d at 430-431.
The present contract is not of a public nature, but rather is a private contract between individuals and a partnership wherein no bond or retainage was required. The link in the Malvaney case creating the interdependent contractual duties was the surety bond required by law. No bond was required in this contract, and in its absence we think that no interdependent duties arise by implication of law. It is our opinion, therefore, that this case is not authority for enlarging the contract beyond its express terms. We conclude that this assignment of error is without merit.
The thrust of the appellants' second point is that Fran's relationship with the Owners was of a dual nature; that is, with regard to the basic construction requirements the relationship was one of contract, whereas, the relationship by which Fran was to engage subcontractors to perform the specialized work was one of principal and agent. A portion of the contract is relied upon by the appellants to sustain this position. It is as follows:
All portions of the work that the Contractor's organization has not been accustomed to perform or that the Owner may direct, shall be executed under subcontracts unless otherwise directed by the Owner. The Contractor shall ask for bids from sub-contractors approved by the Architect and shall deliver such bids to him, or the Architect shall procure such bids himself, and in either case the Architect shall determine, with the advice of the Contractor and subject to the approval of the Owner, the award and amount of the accepted bid. Such work shall be contracted for with such approved bidders in accordance with the terms of this agreement and the General Conditions of the Contract which conditions shall, for the purposes of such contracts, stand as printed or written and not be subject to the modifications set forth herein.
Absent terms creating the relationship of principal and agent, a determination of the existence of such relationship is one of fact. The general rule is stated in 3 Am.Jur.2d, Agency, section 21 (1962) as follows:
The question whether an agency has been created is ordinarily a question of fact which may be established the same as any other fact, either by direct or by circumstantial evidence; and whether an agency has in fact been created is to be determined by the relations of the parties *618 as they exist under their agreements or acts, with the question being ultimately one of intention. The question is to be determined by the fact that one represents and is acting for another, and not by the consideration that it will be inconvenient or unjust if he is not held to be the agent of such other; and if relations exist which will constitute an agency, it will be an agency whether the parties understood the exact nature of the relation or not. Moreover, the manner in which the parties designate the relationship is not controlling, and if an act done by one person in behalf of another is in its essential nature one of agency, the one is the agent of such other notwithstanding he is not so called. Conversely, the mere use of the word "agent" by parties in their contract cannot be held to have the effect of making one an agent who, in fact, is not such. (Emphasis added.)
The chancellor found that all of the appellants negotiated directly with Fran; that Fran was designated as the contractor and the appellants as the subcontractors; and that none of the appellants had any direct contact with the Owners or any authorized agent. He concluded from the contract, the evidence and the circumstances that there was not a relationship of agency between Fran and the Owners. We have reviewed the entirety of the record and it is our opinion that the chancellor rather than being manifestly wrong in this finding was eminently correct therein as the testimony reflects the following additional factors not mentioned by the chancellor in his findings. These are, that Engle investigated the credit of Fran with the Deposit Guaranty National Bank, with the title insurance company, and requested that it be made a joint payee in the progress payment checks to Fran and that such request was denied. It thus entered into the contract after its own investigation with knowledge of Fran's financial situation with no reliance upon the Owners. We are of the opinion that it cannot now successfully argue that Fran was the undisclosed agent of the Owners. See Williams & Williams v. Warren, 134 Miss. 899, 99 So. 266 (1924), wherein this Court rejected the theory of agency with regard to a cost plus contract and concluded that a builder with general supervisory authority over the construction of a building, including securing the labor and material therefor, was a contractor entitled to the benefits of a lien statute. Again, the chancellor's findings, when measured by evidence and the situation of the parties, points logically to the conclusion that the parties did not intend, and therefore did not create, a relationship of agency. We conclude that this assignment of error and its supporting argument is not persuasive.
The appellants next contend that as between the Owners and the subcontractors, both innocent parties, the former must bear the loss caused by the malfeasance of Fran since they were in the best position to have prevented the loss from occurring, citing First National Bank of Jackson v. Deposit Guaranty Bank & Trust Co., 247 Miss. 765, 156 So.2d 814 (1963); Weil Bros. v. Keenan, 180 Miss. 697, 178 So. 90 (1938); and Railway Express Agcy. v. Bank of Philadelphia, 168 Miss. 279, 150 So. 525 (1933). It is regrettably true that either the appellants will lose their labor and materials in the amounts stated or the Owners will be forced to make a double payment. It does not necessarily follow, however, that the Owners were in the best position to have prevented the loss. The determination of "who was in the best position to have prevented the loss from occurring" is one of fact. The Owners initiated the overall project. They trusted and relied heavily upon Fran. This trust was misplaced, causing the loss to occur. It is just as true, however, that Engle also relied upon Fran as it investigated Fran's credit, as mentioned above, and relied thereon. Additionally, neither Engle nor the other appellants availed themselves of the remedy afforded by statute, specifically Mississippi Code 1942 Annotated section 372 (1956). In Jones Supply Co. v. Ishee, *619 249 Miss. 515, 527, 163 So.2d 470, 475 (1964), this Court stated with regard to the applicability of the lien statutes, the following:
The lien statutes of Mississippi afford an abundance of protection for mechanics and materialmen. But in all cases such persons must take action as a condition precedent to receiving the benefits thereof, and upon their failure so to do, their remedies are those of common creditors. The appellees here took no action over a period of several months in which to protect themselves, and by their failure so to do, lost the benefits accorded by statute to them.
The appellants did not avail themselves of the lien statute when there was an indebtedness due Fran by the Owners. In Williams v. Taylor, 216 Miss. 563, 569, 62 So.2d 883, 885 (1953) this Court stated:
In the case of Chancellor v. Melvin, 211 Miss. 590, 52 So.2d 360, numerous authorities were reviewed and we reiterated what had been previously held by this Court. Among the principles there stated and here applicable are these: (1) Under a building contract such as here involved subcontractors, laborers and materialmen, who have dealt only with the prime contractor, have no lien on the money owed by the owner to the contractor until the statutory stop notice is given in accordance with Code Section 372; (2) if nothing is then owing by the owner to the contractor, the subcontractors, laborers and materialmen have no lien on the property nor any valid claim against the owner for the debts owing to them by the contractor; (3) even though the contract does not require that the owner pay anything before completion of the job, the owner may nevertheless make advances to the principal contractor during the progress of the work in any method and at any time they may agree upon and he will be protected in so doing.
In comparing the principles of law announced in the cases of Williams and Ishee, supra, with the equitable situations found in First National Bank, Weil Bros., and Railway Express, supra, we cannot state that the chancellor erred in holding that the failure of the appellants to avail themselves of the statutory remedy was of a lesser degree of importance than the misplaced trust of the Owners in Fran, as we note the appellants also trusted and were also deceived. The argument propounded to sustain this point is not persuasive.
Engle argues individually that the work necessary to the building was not included in the last payment by the Owners to Fran since it was performed subsequent thereto. Engle thus contends it would be inequitable for the Owners to have the benefit of the labor when they had not been billed for it. An examination of the record reflects, and the chancellor found, that the amounts paid to Fran were prepayments or advances of the amount due. These advances spanned the time interval of August 1, 1966, until the filing of the stop notice by Engle in the early part of September 1966. The contract was between the Owners and Fran. The Owners had the legal right to make advance payments if they so desired. The facts reflect that the payments, supposedly for construction already performed, were actually prepayments or advances unwittingly made by the Owners due to the malfeasance of Fran. We are of the opinion that advance payments by an owner to a contractor, whether intentional or unintentional, as long as they extinguish the debt and predate the stop notice, preclude liability on the part of the owner. In Williams v. Taylor, 216 Miss. 563, 569, 62 So.2d 883, 885 (1953), we held:
* * * [E]ven though the contract does not require that the owner pay anything before completion of the job, the owner may nevertheless make advances to the principal contractor during the progress of the work in any method and at any time they may agree upon and he will be protected in so doing.
*620 We are constrained to hold, though the loss of Engle is substantial, that Fran was paid in advance prior to the filing of Engle's stop notice and that this assignment of error is unavailing.
The subcontractors next contend that Clingan is liable to them due to his negligence in not disseminating the contract modifications, which excluded the surety bond and the retainage feature, as well as for his negligence in certifying the applications for progress payments by Fran as payable without proper investigation to see if they were supported by receipted bills, and whether the work was actually being performed. We think that which was stated in Malvaney, supra, is also apropos to this contention. Succinctly, this was a private contract for the benefit of the Owners and Clingan. The subcontractors relied upon Fran. Not a single request was made by them to Clingan as to the terms of his contract nor as to the financial status of Fran. In Hartford Accident & Indemnity Co. v. Hewes, 190 Miss. 225, 234, 199 So. 93, 95 (1940), we stated:
But the controlling principle of law here involved is that one not a party to a contract can sue for a breach thereof only when the condition which is alleged to have been broken was placed in the contract for his direct benefit. A mere incidental beneficiary acquires by virtue of the contractual obligation no right against the promisor or the promisee. Williston on Contracts, Vol. 2, Sec. 402, page 1157; Restatement of Contracts, Section 147; 6 R.C.L., Section 274, page 886; American Jurisprudence, Vol. 12, Sections 281 and 282; 17 C.J.S. Contracts § 519, subsection c, page 1127, and numerous cases cited by these three texts last above mentioned, which hold that a third person cannot maintain an action upon a contract merely because he would receive a benefit from its performance or because he is injured by a breach thereof. That in order to do so, the provision sought to be invoked must have been inserted in the contract directly or primarily for his benefit; or to state the same rule differently, one not a party to a contract and who would be only indirectly and incidentally benefited by its performance cannot recover for a breach thereof.
See also Burns v. Washington Savings, 251 Miss. 789, 171 So.2d 322 (1965). We are of the opinion that the subcontractors were not such "third party beneficiaries" as to prevail in this action. Any benefit accruing to them from the contract was at best remote and indirect, and clearly did not vest in them by the terms of the contract. Additionally, we note the chancellor found that Clingan was not negligent in the performance of his duties springing from the contract. For these reasons we are of the opinion that this assignment of error is also without merit.
We firmly believe that the laborer is worthy of his hire, but we must conclude that the courts cannot aid those who neglect the opportunities afforded by statute.
Affirmed.
RODGERS, INZER, SMITH, and ROBERTSON, JJ., concur.