**James G. OWEN, Jr., Plaintiff,**

v.

**James Charles DODD et al., Defendants.**

**No. DC76–68–K.**

United States District Court,
N. D. Mississippi,
Delta Division.

May 25, 1977.

Erich W. Merrill, Memphis, Tenn., for plaintiff.

W. O. Luckett, Clarksdale, Miss., for Brewer.

---

Albert T. McRae, Memphis, Tenn., Jerome C. Hafter, Greenville, Miss., for Dodd.

Jack F. Dunbar, Clarksdale, Miss., for Chapel Hill Heights.

## MEMORANDUM OPINION

KEADY, Chief Judge.

The court has before it the motion of defendant Brewer, Godbold & Associates, Ltd., an association of architects, for summary judgment or, in the alternative, to dismiss for failure to state a claim upon which relief can be granted.

In this action, James G. Owen, Jr., plaintiff, asserts claims as general contractor against the defendants[1] for alleged increases in construction costs on an apartment project which plaintiff incurred as a result of several allegedly negligent and misleading acts of the defendants. Included in plaintiff's complaint is a claim against Brewer, Godbold & Associates, Ltd. (Brewer) for increased costs suffered by plaintiff as a result of Brewer's allegedly negligent and improper preparation of a drainage plan for the construction site.

Specifically, plaintiff alleges that it relied upon a drainage plan prepared, at least in part, by Brewer when entering into a construction contract with the owner. Plaintiff further contends that Brewer's failure to exercise reasonable skill and care in the preparation of the drainage plan caused the plan to be inadequate, and, as a result, preparation of the construction site in accordance therewith failed to provide sufficient off-site drainage. Plaintiff thus claims economic loss in the amount of $65,-000 caused by construction problems encountered as a result of the accumulation of water on the site proximately resulting from Brewer's failure to exercise due care in preparation of the site drainage plan.

Brewer now moves for summary judgment and dismissal on the claim against it on the grounds that it was neither employed to prepare not did it prepare the site drainage plan in question. In the alternative, Brewer asserts, even assuming some nexus between it and the preparation of the site drainage plan, that it owed no legal duty to plaintiff. Brewer draws factual support for its second contention from the relationship of the parties to the construction contract.

The owner engaged James C. Dodd as the architect to administer the construction contract. Dodd, in turn, employed Robert A. Miller, an engineer, to work, inter alia, on the site drainage plan. Subsequently, Dodd engaged Brewer to provide consultant services, including "aiding Mr. Robert Miller in the development of site Grading and Drainage Plan."

Brewer, however, contends that the sole assistance it provided toward preparation of the drainage plan was limited to turning over to Miller a contour drawing prepared by the Federal Housing Authority. Indeed, the drainage plan bears the professional seals of only Dodd and Miller. Conversely, the record reveals sufficient uncertainty as to the nature and extent of Brewer's involvement in the preparation of the drainage plan to make it inappropriate for this court to resolve those factual disputes in order to dispose of Brewer's motion.

Brewer's alternative contention asserting that it owed no legal duty to plaintiff—thus precluding plaintiff's negligence claims, would, if well taken, render the issues concerning their participation in drainage plan preparation immaterial, and thus, unrelated to disposition of the motion sub judice. For reasons stated below, however, we conclude that Brewer's contention in this regard is not well taken.

In support of its attempt to establish the nonexistence of a legal duty to plaintiff, Brewer first asserts that Miss.Code Ann. §§ 73–1–35; –13–29, –39 (1972),[2] and the

---

1. Named in the complaint as defendants along with Clarksdale and Brewer were the owner, Chapel Hill Heights, Inc., James C. Dodd, an architect, and the Federal Housing Authority (FHA). Pursuant to orders previously entered,

immaterial to our disposition of the present motion, no claim is now pending against either Chapel Hill Heights, Inc. or FHA.

2. These statutes provide in relevant part:

decision by the Mississippi Supreme Court in *State Board of Registration v. Rogers*, 239 Miss. 35, 120 So.2d 772 (1960) compel the conclusion that by "presumption of law" Brewer cannot be held responsible for any defects in the drainage plan since its seal was not affixed thereto. We are unpersuaded that these statutes and the *Rogers* decision can properly be given such a broadly preclusive reading. In fact, the statutory provisions were obviously designed to protect the public from those who would hold themselves out as professional architects or engineers, but who, in fact, do not meet the minimum educational and experitial requirements; not to limit the scope of professional liability, Miss.Code Ann. §§ 73–1–1, –18–1 (1972).

The general proposition from *Rogers* upon which Brewer relies heavily is as follows:

> The presumption is that, if an architect is licensed and registered, he has the capability of planning a building and supervising its construction in accordance with his plans. Consequently, if he undertakes a project, he alone will be held responsible therefor. If he delegates any part of his duties, he does so at his peril. 120 So.2d at 775.

Significantly however, the circumstances presented in *Rogers* are notably distinguishable from those in the case *sub judice*.

*Rogers* involved a suit by the State Board of Registration for Professional Engineers to enjoin the use of the title "mechanical designer" by one who was not a licensed professional engineer. The court held that

> Inasmuch as Rogers' work was supervised and controlled by the architect or engineer for whom he was doing the work, obviously his status was not that of an independent contractor or practitioner of engineering but rather a helper or employee. . . . [Therefore] in the mode and manner of his work [Rogers] did not violate the law against the unlawful practice of engineering. *Rogers,* supra at 776.

Brewer reasons that the language dealing with a professional architect's responsibility discussed in *Rogers*—clearly applicable to employment of nonprofessionals by licensed architects—together with the court's observation that Rogers was not practicing the profession of engineering, mandates the conclusion that a consulting architect owes no duty to a general contractor who suffers economic loss because of such architect's alleged negligence. The fallacy of Brewer's position is readily apparent. Indeed, it is clear that the state supreme court spoke of an architect's sole responsibility for a project *only* in the context of situations involving the delegation of duties to nonprofessionals.[3]

---

Every registered architect shall procure from the secretary of the board a seal or rubber stamp . . . No architect shall affix his seal or stamp to any document which has not been prepared under his or her individual supervision. Miss.Code Ann. § 73–1–35. Each Registrant hereunder shall . . . obtain a seal . . . .. Plans, specifications, plats, and reports prepared by the registrant shall be stamped with the said seal when filed with public authorities, during the life of the registrant's [signature] . . . .. Id. § 73–13–29.

Any person . . . presenting or attempting to use as his own the certificate of registration or seal of another . . . shall be guilty of a misdemeanor . . . .. Id. § 73–13–39.

3. Reading the entire passage from *Rogers* dealing with the professional architect's responsibility clearly illustrates the limited context with

which the Mississippi Supreme Court was concerned.

The presumption is that, if an architect is licensed and registered, he has the capability of planning a building and supervising its construction in accordance with his plans. Consequently if he undertakes a project, he alone will be held responsible therefor. If he delegates any part of his duties, he does so at his peril. It is doubtless true in all professions that practitioners are often able to gauge the aptitude, ability, and dependability of their associates or helpers, with the result that they delegate to such associates or helpers the discharge of very important duties. Doctors often use the services of a radiologist and technician, not admitted to practice medicine, in making a diagnosis and in carrying out a prescribed treatment; but such helpers do not thereby violate the statute against the unlawful practice of medicine. Likewise an efficient legal secretary, at the direction of her employer, might take from the records the necessary information from which

Moreover, *Engle Acoustics & Tile, Inc. v. Grenfell,* 223 So.2d 613 (1969), provides direct support for the proposition that Mississippi does recognize the right of a third party to maintain a negligence claim against an architect with whom there is no privity of contract. In *Grenfell,* the subcontractors asserted a negligence claim against an architect with whom they were not in privity. On appeal the Mississippi Supreme Court affirmed the denial of relief upon the grounds that the subcontractors were not third-party beneficiaries of the architect-owner contract and the chancellor's correct factual finding that the architect was not negligent in the performance of duties arising from that contract. 223 So.2d at 620. Since both points were given as reasons for the court's affirmance, the contention that the court's determination on the facts that the architect had been negligent would have, as defendant Brewer implicitly asserts, made no difference is clearly unreasonable. Therefore, we conclude that under Mississippi law an architect's duty to use ordinary and reasonable skill in the preparation of plans and specifications extends to the owner's general contractor who relies upon those plans and is proximately economically injured as a result. See *Grenfell,* supra at 620. Accord, *A. R. Moyer, Inc. v. Graham,* 285 So.2d 397 (Fla.1973). See also, Mississippi Law Institute, *Construction Litigation,* (1976); Witherspoon, *When is an Architect Liable?* 32 Miss.L.J. 40 (1960). Moreover, that the general contractor may not be in privity with the defendant architect is, by statute, no longer available as a defense to preclude a claim for negligent infliction of economic loss resulting from the architect's breach of that duty. Miss.Code Ann. § 11–7–20 (Supp.1976).[4] Indeed, the subcontractor's status in *Grenfell,* forecast well in advance of the cited statute, was arguably more remote than Owen, the general contractor here.

Having reached the foregoing conclusion that the scope of an architect's duty of reasonable care in the preparation of plans extends to the general contractor no less than to the owner, the materiality of the disputed factual issues dealing with the nature and extent of Brewer's involvement in the preparation of the site drainage plan becomes readily apparent. Therefore, both summary judgment and dismissal for failure to state a claim upon which relief may be granted would be improper.

Finally, our view that Brewer's assertion that, as an agent or quasi-arbitrator, it has no liability for negligent acts performed in good faith, citing *Transpac Construction Co. v. Clark & Groff Engineers, Inc.,* 466 F.2d 823 (9 Cir. 1972), does not merit lengthy discussion. In fact, this argument is inapposite in the instant context where the claim against the architect is based upon *his* alleged negligence in preparing plans rather than alleged damage as a result of negligent acts committed by an architect in carrying out supervisory duties. *Transpac, supra* at 829–30; 5 Am.Jur.2d, Architects §§ 6, 8 (1962). Architect's Liability to Contractor, 65 A.L.R.3d 249, 261–63 (1975). Even if applicable, this contention also raises material issues of genuine fact as to Brewer's status and good faith, which this court could not properly dispose of on the basis of Brewer's motion.

Let an order issue accordingly.

---

the attorney would assume the responsibility of certifying to the state of a title, but she would not, on that account, be practicing law.

**4.** This section provides

In all causes of action for personal injury or property damage or economic loss brought on account of negligence, strict liability or breach of warranty, including actions brought under the provisions of the Uniform Commercial Code, privity shall not be a requirement to maintain such action.