# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 98-CT-00762-SCT

*AMERIHOST DEVELOPMENT, INC.*

*v.*

*BROMANCO, INC.; K & K BATHTUB REPAIR;*

*DIAMOND DOOR GROUP, INC.; DEER PARK*

*FENCE & INSULATION CO.; GREY PLUMBING, INC.;*

*S & L CREATIVE CARPET; VICKSBURG PAINT &*

*GLASS COMPANY; PRECISION ROOF SERVICES, INC.;*

*VINZANT CONSTRUCTION; CONTROLLED AIR*

*COMFORT COMPANY; SOUTHERN ELECTRIC*

*SUPPLY COMPANY, INC.; WRIGHT'S PAINTING;*

*BRUCE COPES ELECTRICAL, INC.; METROPOLIS*

*BUILDERS SUPPLY; PARADISE POOLS & SPAS;*

*BARRY LANDSCAPE, INC.; UNITED PIPING, INC.;*

*UPTON PLASTERING; MID-SOUTH LUMBER &*

*SUPPLY, INC.; W. J. RUNYON & SON, INC.; TESA/ENTRY*

*SYSTEMS, INC.; AND GEE & STRICKLAND, INC.*

### ON WRIT OF CERTIORARI

| DATE OF JUDGMENT: | 4/15/1998 |
|---|---|
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PHIL B. ABERNETHY |
| | JEFFREY TODD WAYCASTER |
| | RICHARD M. DYE |
| ATTORNEYS FOR APPELLEES: | ROBERT R. BAILESS |
| | CHARLES L. BALCH, III |
| | JAMES L. PENLEY, JR. |
| | LUCIUS B. DABNEY, JR. |
| | JOHN H. SHOWS |
| | ALAN L. BURRELL |
| | WREN C. WAY |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | The judgment of the Warren County Circuit Court is reversed and remanded for further proceedings consistent with this opinion. The judgment of the Court of Appeals is affirmed.- 4/12/2001 |
| MOTION FOR REHEARING FILED: | 4/25/2001; denied 6/21/2001 |
| MANDATE ISSUED: | 6/28/2001 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. This appeal presents the issue of whether a subcontractor's stop payment notice to the owner benefits all subcontractors and suppliers, including those who failed to give a stop payment notice before the owner made the final payment to the general contractor. We find that one stop payment notice does not inure to the benefit of the other subcontractors.

<u>**FACTS AND PROCEEDINGS BELOW**</u>

¶2. Amerihost Development, Inc., an Illinois corporation licensed to do business in Mississippi, is the owner/developer of a construction project known as Days Inn, Rainbow Park, in Vicksburg, Mississippi. Amerihost entered into a construction contract with general contractor Bromanco, Inc., for $2,011,082.83. No construction lender was involved as Amerihost self-financed the project. Amerihost made irregular

inspections of the project site through its personnel, choosing to rely heavily on Bromanco's expertise as the general contractor.

¶3. The contract specified that periodic progress payments minus a ten percent retainage would be made to Bromanco. Before Amerihost would send progress payments, Bromanco was required to submit periodic applications for payment, stating the percentages of completion and including appropriate lien waivers. A total of eight progress payments were made to Bromanco.

¶4. Initially, Bromanco provided the appropriate applications, and the project progressed without any major problems. However, as the project neared completion Bromanco began to submit applications for payment without complete lien waivers, and, in fact, submitted some duplicate lien waivers. Yet, during this period, no stop notices were sent to Amerihost by any subcontractors, materialmen, or suppliers.

¶5. On April 17, 1995, Wright's Painting Co., a subcontractor, tendered a statutory stop payment notice for $25,000 to Amerihost. This dispute was resolved. On April 30, 1995, Bromanco submitted an application for payment on the project in the amount of $272,819.13, which would leave a retainage of $110,330.20 after payment. On May 5, 1995, Amerihost received a stop notice letter from Southern Electric Supply Company stating that it had not been paid approximately $30,881.56. On May 15, 1995, Amerihost paid Bromanco $272,819.13.

¶6. After receiving this payment, Bromanco defaulted as general contractor even though the project was substantially complete. As a result Amerihost hired its own work force at a cost of $19,844.62 to complete the project, leaving a retainage of $90,485.58.

¶7. Between May 15 and November 15, 1995, Amerihost received numerous stop payment notices and/or bills from several of the Bromanco subcontractors and materialmen. Consequently, on November 15, 1995, Amerihost filed an interpleader action against the subcontractors and materialmen[1] and paid the remaining retainage of $90,485.58 into the registry of the Warren County Circuit Court.

¶8. The circuit court found that one subcontractor's stop payment notice was sufficient to require Amerihost to withhold all outstanding money due Bromanco until an investigation was made to determine whether there were other unpaid subcontractors. Based on the single stop payment notice, the owner was held liable for all other unpaid claims of subcontractors that existed on the date of the notice, together with attorneys' fees and costs to the subcontractors.

¶9. The Court of Appeals reversed, finding a statutory stop-payment notice benefits only the subcontractor giving notice. ***Amerihost Dev., Inc. v. Bromanco, Inc.,*** No. 98-CA-60762-COA (Miss. Ct. App. 2000). A motion for rehearing was denied by a 5-3 vote. We, in turn, granted certiorari.

## DISCUSSION

### I. INTERPRETATION OF MISS. CODE ANN. § 85-7-181 (1999).

### A. Effect of One Subcontractor's Stop Payment Notice.

¶10. Save an amendment in 1987 allowing reasonable attorney's fees, Miss. Code Ann. § 85-7-181 has remained unchanged since it was amended to its present form in 1918. A comparison of the wording in the predecessor 1906 statute and the 1918 statute shows a single stop payment notice protects only the party

giving actual written notice. The following is a partial[(2)] comparison of the 1906 statute, 1906 Miss. Laws § 3074, and the 1918 statute, 1918 Miss. Laws ch. 128:

**1906 Statute**

**Deletions made in 1918 are in bold:**

When any contractor or master workman shall not pay any person who may have furnished materials used in the erection, construction, alteration or repairing of any house, building, structure, fixture, boat, water-craft, railroad, railroad embankment, **or** the amount due by him to any subcontractor therein, or the wages of any journeyman or laborer employed by him therein, such person, sub-contractor, journeyman or laborer may give notice, in writing, to the owner thereof of the amount due and thereupon the amount the amount that may be due by such owner to the contractor or master workman shall be bound **and liable** in the hands of such owner for payment **of the sum so claimed**

**1918 Statute**

**Additions made in 1918 are in bold:**

When any contractor or master workman shall not pay any person who may have furnished materials used in the erection, construction, alteration or repairing of any house, building, structure, fixture, boat, water-craft, railroad, railroad embankment, the amount due by him to any subcontractor therein, or the wages of any journeyman or laborer employed by him therein, **any** such person, sub-contractor, journeyman or laborer may give notice, in writing, to the owner thereof of the amount due **him and claim the benefit of this section**; and thereupon the amount that may be due **upon the date of the service of such notice** by such owner to the contractor or master workman shall be bound in the hands of such owner for payment **in full, or if insufficient then pro rata, of all sums due such person, subcontractor, journeyman or laborer who might lawfully have given notice in writing to the owner hereunder;**

¶11. Relying on *McNair v. M.L. Virden Lumber Co.,* 193 Miss. 232, 4 So. 2d 684 (1941), the subcontractors argue that the 1918 statute requires the owner to hold up all payments due the general contractor and give equal rights to all subcontractors regardless of when or whether the other subcontractors give written notice. In *McNair* we explicitly refused to decide the issue, stating,

> We are not considering a case where the owner pays the balance to the one giving notice before he receives such notice from others, or before others assert their claims in court. That is not the case. We will deal with that when and if such situation arises.
>
> * * *
>
> One notice stops the right of the owner to pay the contractor the amount claimed in *that notice.*

*Id.* at 689 (emphasis added).

¶12. The statute clearly contemplates notice in writing to the owner of all sums due each subcontractor. Only subcontractors who give the required notice under the statute are entitled to claim the benefit of this statute. We agree with the Court of Appeals' interpretation of § 85-7-181: "It would be destructive of the overall purpose of the construction of § 85-7-181 to hold . . . that the legislature intended for one notice to serve as right of lien by all potential subcontractors . . . who have labored and provided supplies but have not followed the requirements of the same." Therefore, we hold that the filing of a stop-payment notice under § 85-7-181 benefits only the subcontractor(s) giving actual notice prior to the time the owner pays the prime contractor.

¶13. In affirming the Court of Appeals on this issue, we must acknowledge that this is a very difficult decision to make, but no other result can be reached under a fair reading of the statute. We think it significant that this statute has apparently worked well under our interpretation since the present version was adopted in 1918. That is not to say that the Legislature should not revisit this statute to bring the language up to date and to review the protections offered in light of use and custom in today's construction industry.

### B. Filing of Suit.

¶14. Further comparison of the 1906 and 1918 statutes is helpful:

| 1906 Statute | 1918 Statute |
| --- | --- |
| and if, after | and if, after **such** |
| notice, the contractor or master workman shall bring suit against the owner, the latter may pay into court the amount due on the contract | notice, the contractor or master workman shall bring suit against the owner, the latter may pay into court the amount due on the contract; |
| and | and |
| **the person giving notice** | **thereupon all persons entitled hereunder, so far as known,** |
| shall be | shall be **made parties and** |
| summoned | summoned **into court** |
| to | to |
| | **protect their rights**, |
| contest the demand of such contractor or master workman; | contest the demand of such contractor or master workman **and other claimants**; |

¶15. We interpret the statute to provide that, once a suit is filed, all interested persons, so far as known, shall be made a party to the suit. The subcontractors argue that since all parties are entitled to notice when suit is filed, the filing of a single stop-notice should also be interpreted to protect all. The reasons for providing all known persons notice once a suit has been filed are obvious. By this point all negotiations have broken off, any debts owed are disputed, and to adjudicate a dispute in a construction project, all interested persons should have notice. The filing of a stop payment notice, on the other hand, comes before matters have deteriorated and ideally will prevent the need for the filing of a lawsuit by encouraging disputes to be resolved between the subcontractor seeking payment and the general contractor/owner. As no lawsuit

was filed by the subcontractors, we affirm the Court of Appeals' finding that a subcontractor is not required to give notice to all known persons that he has given an owner/subcontractor a stop-payment notice.

## II. DOES THE COURT OF APPEALS' OPINION CONFLICT WITH PRIOR DECISIONS OF THIS COURT?

¶16. The trial court held that Amerihost negligently or wilfully failed to ensure that Bromanco was paying the subcontractors, that such failure proximately caused the subcontractors' losses, and that Amerihost, as both owner and lender, was liable for all subcontractors' claims even if the claims exceeded the amount due to them under the contract. The court reasoned that Amerihost was liable due to its failure to monitor properly the progress of the work and, citing *First Nat'l Bank v. Virden*, 208 Miss. 679, 45 So. 2d 268 (1950), due to its failure to ensure that the subcontractors were paid.

¶17. In distinguishing *Virden,* the Court of Appeals noted that *Virden* was decided in the context of mortgage law where an issue of preference arose between competing liens. In *Virden*, we held that where a bank accepted a deed of trust on property from the contractor and advanced proceeds to the contractor but failed to ensure that the funds were being spent on the construction project, the bank's lien was superior to those of materialmen only to the extent that the loan proceeds actually went into the project. *Id.*

¶18. However, in the present case, a mortgage was not involved because Amerihost was self funded. A mechanic's lien case, *Engle Acoustic & Tile, Inc. v. Grenfell*, 223 So. 2d 613 (Miss. 1969), is more on point. Suit was brought by several subcontractors against the project's owners and architect for balances due them as a result of the default of Fran Builders, the prime contractor. Fran made nine applications for payment for labor and materials furnished. Each application was submitted to the owner's architect for verification before payment was remitted. Near the end of the project, it became apparent that Fran had not paid all laborers and materialmen involved in the project and work ceased shortly thereafter. Fran was later declared bankrupt. None of the laborers or materialmen filed a stop payment notice on their claims until after the owners had paid Fran in full in response to its ninth and last application for payment.

¶19. In reaching a favorable decision for the owners, we acknowledged the difficult consequences resulting from our decision: "[I]t is regrettably true that either the subcontractors will lose their labor and materials in the amounts stated or the owners will be forced to make a double payment. It does not necessarily follow, however, that the owners were in the best position to have prevented the loss." *Id.* at 618. As was the situation in the case sub judice, the owners in *Engle*, initiated the overall project and trusted and relied heavily upon their prime contractor to complete the contracted project without any difficulties or problems. We acknowledged that the subcontractors and materialmen also relied on and trusted Fran, but their reliance and trust were as equally misguided and displaced as was that of the owners.

¶20. In ultimately deciding which party, the owners or the subcontractors, was in the best position to prevent the resulting losses, we held that none of the subcontractors had availed themselves of the pertinent statutory remedy. *Id*. So long as advance payments to the prime contractor extinguished debt and were paid prior to receipt of the statutory stop payment notices, liability was precluded on the part of the owners. *Id*. at 619.

¶21. The Court of Appeals, relying on *Engle*, determined that

the subcontractors and materialmen were not left without recourse under the current statutory

construction of § 85-7-181, provided they invoke its benefits and protections through their own due diligence and in accordance with the statutory requirements. To allow those who failed to avail themselves of its benefits, would seek to circumvent the statutory requirements and ride the coat-tails of those subcontractors and materialmen who actually asserted their rights.

¶22. We agree with the Court of Appeals that to allow such a result would offend justice and be destructive of the overall purpose and intent behind § 85-7-181. As such, we find that the Court of Appeals properly interpreted and applied *Virden* and *Engle* to the facts in this case.

### III. ATTORNEY'S FEES.

¶23. The Court of Appeals determined that the subcontractors were not entitled to attorney's fees, but remanded the case to the circuit court on the sole issue of whether Amerihost was so entitled.

#### A. Subcontractors.

¶24. Miss. Code Ann. § 85-7-181 provides that a subcontractor is entitled to attorney's fees if the owner denies any indebtedness. The circuit court awarded attorney's fees to the laborers, subcontractors and materialmen. The Court of Appeals reversed, finding that there was no showing that Amerihost had denied any indebtedness. Southern Electric's stop payment notice did not constitute a denial of debt by Amerihost. Rather, Amerihost's filing of this interpleader action sufficiently demonstrated that it was willing to pay whomever the trial court determined had a valid claim to the interpled funds.

#### B. Amerihost.

¶25. Amerihost argues that it was entitled to attorney's fees for defending the subcontractors' claims in the interpleader action. *See Perkins State Bank v. Connolly,* 632 F.2d 1306, 1311 (5th Cir. 1980) (A party who initiates an interpleader action and qualifies as a mere disinterested stake holder may be awarded reasonable attorney's fees); *Maryland Cas. Co. v. Sauter,* 377 F. Supp. 68, 70 (N.D. Miss. 1974) (A party who has properly brought an interpleader action may be entitled to an award of attorney's fees). The Court of Appeals remanded to the circuit court to make a factual finding of whether Amerihost was a disinterested stakeholder and therefore entitled to attorney's fees. "An award of attorneys' fees and costs in favor of the party representing an interpleader action against funds interpled into the court registry is a discretionary matter lying with the trial court." *See Hartford Acc. & Indem. Co. v. Natchez Inv. Co.,* 161 Miss. 198,132 So. 535, 539 (1931). We agree that the Court of Appeals properly remanded this issue.

### CONCLUSION

¶26. For the foregoing reasons, the judgment of the Court of Appeals is affirmed, and the judgment of the Warren County Circuit Court is reversed and this case is remanded to that circuit court for further proceedings consistent with this opinion.

¶27. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE CIRCUIT COURT IS REVERSED AND THIS CASE IS REMANDED TO THE CIRCUIT COURT OF WARREN COUNTY.**

**PITTMAN, C.J., BANKS, P.J., SMITH, MILLS, COBB AND EASLEY, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT**

**PARTICIPATING**.

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶28. Once a stop payment notice is filed pursuant to Miss. Code Ann. § 85-7-181 (1999), it should benefit all subcontractors and suppliers of the same class. The circuit court so held, and I would affirm its decision. When the owner of a construction project receives a statutory stop payment notice, it is aware that a financial dispute exists and should have a duty to check for other disputes before paying off the general contractor. Where there is smoke there is usually a fire. Accordingly, I dissent.

¶29. Relevant portions of the statute are as follows:

> When any contractor or master workman shall not pay any person . . . any such person, subcontractor, journeyman, or laborer may give notice, in writing, to the owner thereof of the amount due him and claim the benefit of this section .. . . and, thereupon <u>the amount that may be due upon the date of the service of such notice by such owner to the contractor or master workman shall be bound in the hands of such owner</u> for payment in full, or if insufficient then pro rata, of all sums due such person, subcontractor, journeyman, or laborer **who might lawfully have given notice in writing** to the owner hereunder. . . .

Miss. Code Ann. § 85-7-181 (1999) (emphasis added).

¶30. The statute states that, upon written notice, the owner must retain "all such sums" that are owed to anyone who *might* have given notice under this section. It does not require them to have actually given notice to receive the benefits of this section, so long as the owner has received a written stop payment notice. They must merely have been entitled to give notice.

¶31. Furthermore, section 85-7-181 states that if, after giving notice, the contractor sues the owner:

> thereupon all persons entitled hereunder, so far as known, shall be made parties and summoned into court to protect their rights . . . or, in case any person entitled to the benefits hereof shall sue the contractor or master workman, such person so suing shall make the owner and **all other persons interested, either as contractors, master workmen, subcontractors, laborers, journeymen, or materialmen, so far as known, parties to the suit** . . . .

(emphasis added).

¶32. The majority holds that each and every subcontractor and supplier must give a written stop payment notice before reaping the benefits of this section. This is contrary to the plain language of the statute, which states that anyone who **might** have given notice under the statute is entitled to its protections once the owner has received a written stop payment notice. Such an interpretation only serves to protect an owner who negligently pays a general contractor with funds that are owed to subcontractors and suppliers. The majority notes that its decision is a difficult one. The resolution of this case should not be difficult because, under the statute, once notice is given the owner is under a duty to find out what the problems are and to withhold payment from the general contractor until they are resolved. Once a lawsuit is filed, all subcontractors, materialmen, etc. must be made parties, regardless of whether they submitted stop payment notices. It makes no sense to bring these people into court if they have no rights to protect, as the majority now holds.

¶33. Once a suit is commenced, <u>the statute requires all interested persons be made party to the suit</u>. It specifically includes "contractors, master workmen, subcontractors, laborers, journeymen, or materialmen," and does not limit its scope to only those who have provided written stop payment notices. This provision is contrary to the majority's holding that "[o]nly subcontractors who give the required notice under the statute are entitled to claim the benefit of this statute." If only those parties who give written notice may benefit from this statute, then it is senseless to require all others to be joined in the lawsuit as well. The statute mandates that all parties be joined, not merely those who submitted written stop payment notices.

¶34. Amerihost Development, Inc., received its first stop payment notice for $25,000 on April 17, 1995, from Wright's Painting Co. Less than two weeks later, on April 30, Amerihost received a request for payment of $272,819.13 from Bromanco. On May 5,1995, Amerihost received its second stop payment notice for more than $30,000 from Southern Electric Supply Co.[3] Inexplicably, a mere ten days after receiving the second stop payment notice, Amerihost paid Bromanco the entire amount it requested without investigating into claims by Southern Electric or any other subcontractors or suppliers.

¶35. Amerihost received not one but two stop payment notices in less than three weeks, in addition to other irregularities, such as incomplete or duplicate lien waivers. Even so, rather than honor the notice from Southern Electric, much less investigate into other possible claims, Amerihost paid off Bromanco on May 15, 1995. Almost immediately after receiving payment, Bromanco defaulted on the remainder of the project and failed to pay numerous suppliers and subcontractors.

¶36. Amerihost was clearly in the best position to prevent this loss. The contract between it and Bromanco required requests for payment to be accompanied with lien waivers from each of the subcontractors and suppliers before payment was to be made. However, later payments were made without complete lien waivers, or with duplicate lien waivers. Had Amerihost performed its duties under the contract, the subcontractors and suppliers would have been protected. Also, requiring Amerihost to contact the subcontractors and suppliers to find out whether they have been paid before making final payment to Bromanco would not impose an onerous burden. Amerihost should know who they were from previous payments and lien waivers. At the least, it could have demanded a list of subcontractors and suppliers from the general contractor.

¶37. A stop payment notice issued pursuant to Miss. Code Ann. § 85-7-181 (1999) should provide notice of a payment dispute for the benefit of all subcontractors and suppliers of the same class. Because Amerihost received two such notices, one only ten days before paying off Bromanco, it should be liable to the subcontractors and suppliers for amounts paid to Bromanco after receiving the first stop payment notice. Accordingly, I dissent.

<u>**Appendix A**</u>

| **1906 Statute** | **1918 Statute** |
|---|---|
| **Deletions made in 1918 are in bold:** | **Additions made in 1918 are in bold:** |

| | |
|---|---|
| When any contractor or master workman shall not pay any person who may have furnished materials used in the erection, construction, alteration or repairing of any house, building, structure, fixture, boat, water-craft, railroad, railroad embankment, **or** | When any contractor or master workman shall not pay any person who may have furnished materials used in the erection, construction, alteration or repairing of any house, building, structure, fixture, boat, water-craft, railroad, railroad embankment, |
| the amount due by him to any subcontractor therein, or the wages of any journeyman or laborer employed by him therein, | the amount due by him to any subcontractor therein, or the wages of any journeyman or laborer employed by him therein, **any** |
| such person, sub-contractor, journeyman or laborer may give notice, in writing, to the owner thereof of the amount due | such person, sub-contractor, journeyman or laborer may give notice, in writing, to the owner thereof of the amount due **him and claim the benefit of this section**; |
| and thereupon the amount the amount that may be due | and thereupon the amount that may be due **upon the date of the service of such notice** |
| by such owner to the contractor or master workman shall be bound **and liable** | by such owner to the contractor or master workman shall be bound |
| in the hands of such owner for payment **of the sum so claimed** | in the hands of such owner for payment **in full, or if insufficient then pro rata, of all sums due such person, subcontractor, journeyman or laborer who might lawfully have given notice in writing to the owner hereunder;** |
| and if, after | and if, after **such** |
| notice, the contractor or master workman shall bring suit against the owner, the latter may pay into court the amount due on the contract | notice, the contractor or master workman shall bring suit against the owner, the latter may pay into court the amount due on the contract; |
| and **the person giving notice** | and **thereupon all persons entitled hereunder, so far as known,** |
| shall be | shall be **made parties and** |
| summoned | summoned **into court** |
| to | to |
| | **protect their rights**, |
| contest the demand of such contractor or master workman | contest the demand of such contractor or master workman **and other claimants**; |
| and the court **may** | and the court **shall** |
| cause an issue to be made up and tried, and direct | cause an issue to be made up and tried, and direct **the** |
| payment of the amount **claimed by the person giving the notice out of the money so paid into court** | payment of the amount **found due in accordance with the provisions hereof;** |
| or, in case **the** | or, in case **any** |
| person **giving the notice** | person **entitled to the benefits hereof** |

| | |
|---|---|
| shall sue the contractor or master workman, **he** | shall sue the contractor or master workman, **such person so suing** |
| shall make the owner | shall make the owner **and all other persons interested, either as contractors, master workmen, subcontractors, laborers, journeymen or materialmen, so far as known,** |
| **a party** | **parties** |
| to the suit, | to the suit, (**and any such party not made a party in any suit hereunder authorized may intervene by petition**), |
| and thereupon the owner may pay into court the amount | and, thereupon the owner may pay into court the amount **admitted to be** |
| due on the contract, or sufficient to pay the sum | due on the contract, or sufficient to pay the **sums** |
| claimed, **and costs**, | claimed, |
| and the court shall | and the court shall **cause an issue to be made up and** |
| award the same to the person **who may be** | award the same to person **lawfully** |
| entitled **thereto;** | entitled**;** |
| **and** | |
| in **neither** | in **either** |
| case **shall** | case |
| the owner | the owner **shall not** |
| be liable **to pay** costs; | be liable **for** costs; |
| but if the owner, when sued with the contractor or master workman, shall deny any indebtedness sufficient to satisfy the sum claimed, and all costs, the court, | but if the owner, when sued with the contractor or master workman, shall deny any indebtedness sufficient to satisfy the sums claimed and all costs, the court **shall**, |
| at the instance of **the plaintiff**, | at the instance of **any party interested**, |
| **may** | |
| cause an issue to be made up to ascertain the true amount of such indebtedness, and shall give judgment and award costs according to the **justice of the case.** | cause an issue to be made up to ascertain the true amount of such indebtedness, and shall give judgment and award costs* according to the rights of the several parties in accordance herewith. |
| In case judgment shall be given **in favor of the person giving notice, as hereinbefore provided for,** | In case judgment shall be given |
| against the owner, such judgment shall be a lien from the date of **such** notice, | against the owner, such judgment shall be a lien from the date of **the original** notice, |

| | |
|---|---|
| **on the building, house, structure, fixture, boat, water-craft, railroad, or railroad embankment in or upon which the material or labor mentioned in such notice was used or done,** | |
| **and may** be enforced as in case of liens **in other cases** | **and shall** be enforced as other liens |
| provided **for** in this chapter. | provided in this chapter. **The owner shall not be liable in any event for a greater amount than the amount contracted for with the contractor.** |

* This statute was amended in 1987 to allow reasonable attorneys fees to further protect the parties.

1. For convenience, the Court will refer to the subcontractors and materialmen as "subcontractors."

2. A full text comparison is set out in Appendix A.

3. A joint payment agreement entered into February 8, 1995, by Southern Electric, Bromanco, and Copes Electric elevated Southern Electric to the status of a supplier of a general contractor and, therefore, entitled to the protections of section 85-7-181 as of that date.