**FMC FINANCE CORPORATION, Plaintiff-Appellee,**

v.

**Wayne REED, Defendant-Appellant.**

**No. 77–1013.**

United States Court of Appeals, Fifth Circuit.

March 29, 1979.

---

H. L. Merideth, Jr., Greenville, Miss., for defendant-appellant.

Frank W. Hunger, C. S. Tindall, Jr., Greenville, Miss., for plaintiff-appellee.

Before THORNBERRY, AINSWORTH and MORGAN, Circuit Judges.

AINSWORTH, Circuit Judge:

In this Mississippi diversity action, FMC Finance Corporation ("Finance") sued Wayne Reed to recover the outstanding principal and interest due on notes financing Reed's purchase of seventeen cotton module builders from Finance's parent, FMC Corporation ("FMC").[1] Reed then filed a third party complaint against FMC seeking damages for breach of an alleged agreement by FMC to sell cotton module trailers in combination with the module builders. After reviewing the jury's answer to a special interrogatory, the district court entered judgment in favor of Finance on the original complaint and dismissed Reed's third party complaint. We affirm in both respects.

In regard to Finance's action to recover on the notes, Reed's principal contention on appeal relates to Finance's authority to pay FMC on Reed's behalf for the module builders and its right to reimbursement from Reed for amounts thus advanced. The record unequivocally indicates, and the parties do not dispute, that Reed purchased and received from FMC seventeen cotton module builders. Pursuant to a finance agreement, Reed authorized Finance to pay over to FMC, at the latter's request, any balance due on the purchase price of the module builders. Furthermore, pursuant to a power of attorney granted in the finance agreement, Reed authorized Finance to execute notes evidencing Reed's obligation to FMC or (upon payment by Finance to FMC) to Finance. At Reed's insistence, the standard form finance agreement was amended to condition Finance's authority to pay FMC on prior submission by Reed to Finance of invoices for the module builders approved in writing by Reed. Reed never submitted approved invoices to Finance and therefore contends that Finance had no authority to

pay FMC and no right to recover funds so paid from Reed. The jury found, however, in response to a single special interrogatory, that Reed ratified Finance's payment to FMC. That finding relieved Finance of the consequences of its failure to obtain approved invoices from Reed as a precondition to payment to FMC. Since Finance's right of recovery against Reed was otherwise unquestioned, the court entered judgment in favor of Finance. On appeal, Reed contends that the jury was not properly instructed in accordance with Mississippi law on the ratification question and that there was insufficient evidence from which the jury could have concluded that Reed had actual knowledge of the ratified transaction (Finance's payment to FMC) as required by Mississippi law.[2]

Reed is correct in his contention that under Mississippi law a principal can effectively ratify the unauthorized action of his agent only if he has actual knowledge of the facts of the transaction. *See Gulf Refining Co. v. Travis*, 201 Miss. 336, 29 So.2d 100 (1947). The trial judge, however, correctly instructed the jury to that effect, and ample evidence supports the jury's conclusion that Reed was aware of Finance's payment to FMC and knowingly received and retained the benefits thereof (the cotton module builders purchased from FMC with the aid of Finance's financing). Specifically, the Finance employee assigned to supervise Reed's account testified that, upon receiving invoices from FMC covering the balance owed by Reed on the module builders and prior to paying FMC that amount, he contacted Reed who assured him that he would pay Finance as agreed in the finance plan. Subsequently, almost two months after Finance paid FMC, Reed sent Finance a check for $50,000, made out to Finance,

---

1. Both FMC and Finance, a wholly-owned subsidiary, are Delaware corporations with their principal places of business in Chicago. Wayne Reed is a Mississippi resident. A cotton module builder is a machine resembling a rectangular box with the top and bottom open. It is used to compress picked cotton into a rectangular module which can be covered with tarpaulin and left at the edge of a cotton field

until ginning. It is part of a cotton handling system which also involves wooden pallets, upon which the module is constructed and left to rest, and trailers for hauling modules to the gin.

2. The parties do not dispute the applicability of Mississippi law on the ratification issue.

carrying the typed words: "Payment on Module Builders." Furthermore, although he never approved the invoices for the module builders in writing, Reed voiced no complaint about the module builders, accepted them, resold them, and apparently retains the proceeds to this day, without having paid either Finance or FMC the full amount of the purchase price. Thus, from evidence of Reed's acknowledgment of his obligation to Finance and of his acceptance and resale of the module builders, the jury was justified in concluding that Reed ratified Finance's payment of the obligation to FMC. Hence, the trial court acted correctly in entering judgment in favor of Finance for the outstanding balance due for the module builders.

Reed further contends, however, that the finance agreement was usurious under Mississippi law and, hence, that Finance was prohibited from recovering any finance charges or interest on its principal. The district court concluded that the law of California, rather than of Mississippi, was applicable on the usury question and that

under California law Finance's interest rate was legal.[3] We agree.

■ In this diversity action the district court was required to apply the conflicts of law rules of the forum state, Mississippi. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In contract cases, Mississippi courts apply "the most significant relationship" or "center of gravity" approach to choice of law. Under that approach, the court "applies the law of the place which has the most significant relationship to the event and parties, or which, because of the relationship or contact with the event and parties, has the greatest concern with the specific issues with respect to the liabilities and rights of the parties to the litigation." *Craig v. Columbus Compress & Warehouse Co.*, 210 So.2d 645, 649 (Miss.1968). *See also Bunge Corp. v. Biglane*, S.D.Miss., 1976, 418 F.Supp. 1159, 1162–65.[4]

■ In this case, the place with the most significant relationship to the finance agreement between Reed and Finance was California, as the district court properly concluded.[5] The finance agreement was ne-

---

3. On appeal, Reed argues that Mississippi law, rather than California law, is applicable on the usury question. He does not dispute that the interest rate provided for in the finance agreement is within the limits allowed under California law.

4. The Restatement (Second) of Conflict of Laws has adopted, and refined, this "most significant relationship" approach and has been cited approvingly by a court construing Mississippi law. *See Bunge Corp. v. Biglane*, S.D. Miss., 1976, 418 F.Supp. 1159, 1164. The Restatement provides:

 § 188. Law Governing in Absence of Effective Choice by the Parties.
 (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
 (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
 (a) the place of contracting,
 (b) the place of negotiation of the contract,
 (c) the place of performance,

 (d) the location of the subject matter of the contract, and
 (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
 These contacts are to be evaluated according to their relative importance with respect to the particular issue.
 (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied. . . .
 Restatement (Second) of Conflict of Laws § 188 (1971).

5. In concluding that California law, and not Mississippi law, was applicable in regard to the usury question, the district court did not rely on the general "most significant relationship" rule. Instead, it relied on the narrower rule that, when dealing with questions of usurious interest, the law of the state upholding the contract is controlling as long as the contract has substantial connection with that state. *See, e. g., Fahs v. Martin*, 5 Cir., 1955, 224 F.2d 387, 397. In this case, we do not rely on that narrower rule because we can find no Mississippi case specifically adopting it. We note, however, that the Restatement (Second), whose general "most significant relationship" rule is also followed by Mississippi, has adopt-

gotiated at Finance's office in California; the formal document was mailed to Reed from California and returned by Reed to California; and Finance performed under the agreement by making payment for the module builders to FMC in California.[6] The agreement's only significant connections with Mississippi were Reed's Mississippi residency and the fact that some of the module builders, in which Finance was given a security interest, were shipped to Reed in Mississippi.[7] In these circumstances, application of Mississippi's usury law would frustrate Finance's legitimate expectation that it had entered a finance agreement with Reed (indeed, at Reed's request) which was enforceable under California law. In sum, we conclude that Mississippi courts would apply California law on the usury question here in keeping with the basic "most significant relationship" approach to conflicts of law questions in contract cases.

■ In regard to Reed's third party claim against FMC alleging breach of an agreement to provide trailers in combination with the module builders, the district court concluded, after an in camera presentation of evidence by Reed, that there was insufficient evidence of such an agreement to justify presentation of Reed's case to the jury. The court therefore dismissed the third party claim without allowing Reed to present to the jury any evidence concerning the alleged trailer agreement. We agree with the court's disposition.

We agree with the district court that Reed failed to proffer sufficient evidence of an agreement covering trailers to create a jury question. In fact, the documentary evidence clearly and overwhelmingly indicates that Reed intended to purchase trailers independent of FMC from a third party, Riggs Built, Inc. Most importantly, in a letter of June 17, 1974, from Reed to George Saywell of FMC, written subsequent to the negotiations in which the trailer agreement was allegedly reached, Reed stated: "Trailers will be purchased from Riggs Built, Inc. of Chandler, Arizona, for the year 1974, totally independent of FMC, unless there would possibly be a financial arrangement between your finance department, Ben Riggs and myself." In the face of such documentary evidence, and without offering anything but his own testimony to the contrary, Reed could not have prevailed before the jury and proved an agreement by FMC to sell trailers.

■ Furthermore, even if such an agreement could have been proved, it would not be enforceable since Reed has produced no writing sufficient to satisfy the requirements of Mississippi's applicable statute of frauds' provision.[8] To satisfy the statute of

---

ed a rule regarding usury which is similar to that applied by the district court. Restatement (Second) of Conflict of Laws § 203 (1971) ("The validity of a contract will be sustained against the charge of usury if it provides for a rate of interest that is permissible in a state to which the contract has a substantial relationship and is not greatly in excess of the rate permitted by the general usury law of the state of the otherwise applicable law under the rule of § 188.")

6. Reed was obligated under the agreement to make payments to Finance's regional office in Pennsylvania and did in fact make one such payment of $50,000.

7. The module builders were manufactured in California and shipped (f. o. b. Lindsay, Cal.) to various locations in Mississippi, Louisiana, and Arkansas.

8. Both parties evidently assume that Mississippi law is applicable in determining the existence and enforceability of an agreement for sale of trailers. We see no need to question that assumption on our own initiative. In any event, the transaction falls under the sales provision of the Uniform Commercial Code, which has been adopted in all states whose law might be deemed applicable—Mississippi, California, and Arizona (where the trailers were to be manufactured).

Mississippi Code 1972 § 75-2-201 (1973) provides:

(1) Except as otherwise provided in this section, a contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

frauds, Reed relies upon a letter of May 30, 1974, addressed to him from Roy Hodges of FMC.[9] That letter, however, does not indicate that a contract for sale of trailers had been made between Reed and FMC. At most, it conditioned Reed's obligation to purchase module builders on his acceptance of trailers from Riggs and allowed for possible financing of the trailers by Finance. We cannot construe the letter as evidence of an agreement by FMC actually to provide the trailers.

There is no merit in Reed's contention that the alleged trailer agreement was enforceable under the doctrine of promissory estoppel. Under that doctrine, as outlined in the Restatement of Contracts and quoted by Reed in his brief on appeal: "A promise which the promisor should reasonably expect to induce action or forebearance of a definite and substantial character on the part of the promisee and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise." Restatement of Contracts § 90. *See also Brewer v. Universal Credit Company,* 191 Miss. 183, 192 So. 902 (1940); *Associated Tabulating Services,*

*Inc. v. Olympic Life Insurance Co.,* 5 Cir., 1969, 414 F.2d 1306. In this case, however, the deficiency in Reed's claim is that he has adduced insufficient evidence that FMC made any promise regarding trailers. Furthermore, a recent decision of the Mississippi Supreme Court prohibits application of the doctrine of promissory estoppel to cure failure to comply with the statute of frauds. *Thomas v. Prewitt,* 355 So.2d 657 (Miss. 1978). Reed's reliance on promissory estoppel is therefore ill placed.

To summarize, we affirm the judgment in favor of Finance, rendered upon the jury's verdict that Reed ratified Finance's payment to FMC. We also affirm the dismissal of Reed's third party claim.

AFFIRMED.

---

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten (10) days after it is received.

(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

(a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

(c) with respect to goods for which payment has been made and accepted or which

have been received and accepted (Section 2–606) [§ 75–2–606].

9. The letter stated in pertinent part:

Dear Wayne:

This letter is written to review matters discussed during our meeting of 28 May 1974 and to restate condition for sale of FMC Cotton Module Builders.

1. On or about 6 June, upon accepting the Riggs Built Module Transporter you will place a 25% down payment for 10 or more (if available) FMC Cotton Module Builders.

2. It is our understanding that you may finance 10 plus Riggs Transporters independent of FMC.

3. In our meeting with Mr. Stan Budd of FMC Finance Corporation it was understood that you may elect to finance the 10 plus FMC Module Builders along with 10 plus Riggs Transport Trailers. . . .

4. After your acceptance of Riggs Built Transporters (on or about 6 June 1974) FMC will reserve those Module Builders that have been ordered by Wayne Reed with a 25% down payment. . . .

Very truly yours,
Roy A. Hodges
Marketing Service Coordinator