**FOREST OIL CORPORATION, Plaintiff,**

v.

**TENNECO, INC., Defendant.**

**Civ. A. No. J84–0084(L).**

United States District Court, S.D. Mississippi, Jackson Division.

Jan. 7, 1986.

See also, 622 F.Supp. 152.

Michael S. McKay and Glenn Gates Taylor, Jackson, Miss., for plaintiff.

Peyton S. Irby, Jr., John H. Holloman, III and Ernest G. Taylor, Jr., Watkins, Ludlam & Stennis, Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before this court on motion by Tenneco, Inc. (Tenneco) to dismiss for failure to join indispensable parties pursuant to Rule 19 of the Federal Rules of Civil Procedure. Plaintiff Forest Oil Corporation (Forest) filed timely response to Tenneco's motion, and the court has considered the series of supplemented memoranda with attachments submitted by both parties.

On June 1, 1981, Tenneco contracted with Forest to purchase Forest's share of natural gas from wells located in what was known as the "Vintage Field" in Jefferson Davis County, Mississippi. By its terms the contract obligated Tenneco to make "pre-initial delivery payments" [1] (pre-I.D. payments) to Forest, the producer, in exchange for Forest's promise to commit all gas owned by it to the Tenneco contract upon completion of Tenneco's gas pipeline. Tenneco began making its pre-I.D. payments to Forest in March 1982, based upon invoices submitted by Forest indicating that Tenneco's pre-I.D. obligations began in November 1981. Tenneco began taking delivery of gas from the Vintage Field following completion of its gas pipeline in August 1982. The total amount in pre-I.D. payments tendered by Tenneco and received by Forest and the entities it represented under the contract exceeded $9,000,000.00.

In late 1982, Tenneco began experiencing increased deliverability capacity of high-cost gas by some of its producers, while at the same time experiencing a reduced demand for the gas it was reselling. In light of this increased supply and diminished demand, Tenneco began exercising its rights under the immediately exercisable market-out clauses in the vast majority of its contracts.[2] There remained, however, a number of gas purchase contracts which, like Forest's, contained no market-out clauses and which obligated Tenneco to high "take-

---

1. Pre-I.D. payments are prepayments for gas made to the producer by Tenneco before completion of a gas pipeline, based upon an agreed percentage of ownership which Tenneco agrees to pay a producer in the event the pipeline is not hooked up by a specified time.

2. An immediately exercisable market-out clause was included in many of Tenneco's contracts with other producers. It gave Tenneco the right to unilaterally reduce the contract price payable to a producer whenever Tenneco considered it necessary in order to keep its resale price competitive and maintain its profit margin. Such immediately exercisable market-out clauses were the product of negotiation between the parties, and no such clause was contained in the Forest-Tenneco contract.

or-pay payments"[3] provisions over the life of the contracts. Thus, on April 29, 1983, Tenneco announced its Emergency Gas Purchase Policy (EGPP). Utilizing this EGPP, Tenneco either suspended or construed in its favor contractual provisions concerning price, deliveries, take-or-pay, nomination of gas categories and other related matters. The notice of the implementation of the EGPP that was sent to Forest contained a further demand that either Forest accede in writing within one month or Tenneco would terminate the contract. Forest rejected Tenneco's demand and, accordingly, Tenneco reduced its take-or-pay payments and the amount it paid for gas taken from the Vintage Field pursuant to the EGPP. Forest filed its original complaint in this action alleging breach of contract on February 3, 1984.

Tenneco's instant motion requests dismissal of this action on the ground that Forest's complaint seeks recovery not only for itself but also on behalf of two other entities, CDC Producing Company (CDC) and the Forest 1980 U.S. Drilling Partnership (the Drilling Fund). Tenneco argues that during contract negotiations it was aware that the Forest representative was offering to sell the gas interests of the "Forest Group";[4] however, it was unaware until discovery commenced that Forest had no authorization to commit the interests of CDC and the Drilling Fund to such long-term contracts, or that the interests of CDC and the Drilling Fund in the Vintage Field gas were so substantial.[5] Tenneco urges this court that, because the absence of CDC and the Drilling Fund as named plaintiffs in this action could leave Tenneco subject to a substantial risk of incurring multiple or otherwise inconsistent obligations if CDC and the Drilling Fund should be dissatisfied with the disposition of this action, the court should deem CDC and the Drilling Fund indispensable parties to be joined under Rule 19(a).[6] Tenneco concludes that since joinder of CDC and the Drilling Fund would destroy diversity jurisdiction in this cause,[7] dismissal of the action is proper.

■ Forest contends that at the time of contracting it was acting as an authorized agent of both CDC and the Drilling Fund in committing their gas to the Forest-Tenneco contract. As a party in whose name a contract has been made for the benefit of another, Forest asserts that it is the real party in interest authorized under Rule

---

3. A take-or-pay payment is in the nature of a prepayment for gas made available but not actually taken by Tenneco, calculated at a percentage (90% in the Forest-Tenneco contract) of the gas which the producer could have delivered during a contract year, reduced by the amount actually taken by Tenneco, with Tenneco paying the difference to the producer.

4. Deposition testimony of Tenneco's chief gas contract negotiator, John Cameron, indicates that Cameron was aware during the negotiations of the Forest contract that the "Forest Group" was comprised of Forest Oil Corporation, CDC and the Drilling Fund.

5. Tenneco contends, and Forest does not dispute, that over 66% of the gas committed to the Forest-Tenneco contract was owned by CDC and the Drilling Fund.

6. Rule 19(a) provides:
   Persons to be joined if feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in the proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

7. Jurisdiction in this action is based upon diversity of citizenship. Forest is a New York corporation. Tenneco, CDC and the managing and general partners of the Drilling Fund are all Delaware corporations. Thus, joinder of CDC and the Drilling Fund would destroy this court's diversity jurisdiction.

17(a)[8] of both the Federal and Mississippi Rules of Civil Procedure to prosecute the action in its own name. Additionally, Forest alleges that throughout the course of performance of the contract, Tenneco was constantly aware of the interest of both CDC and the Drilling Fund and cannot now be heard to feign surprise that Forest is seeking to vindicate the substantial interests of CDC and the Drilling Fund in this action. Forest lastly asserts that CDC and the Drilling Fund will be bound by any judgment in this case since, as privies of Forest, they will be collaterally estopped from relitigating in a subsequent action any issues adjudicated in this action. The parties are in substantial agreement that this court, in following Mississippi choice-of-law rules, is *Erie* -bound to apply Mississippi substantive law. *See Spragins v. Louise Plantation, Inc.*, 391 So.2d 97 (Miss.1980); *Mitchell v. Craft*, 211 So.2d 509 (Miss.1968).

*Agency*

■■■ In order to bring this suit in its own name, Forest has the burden of establishing the existence of an agency relationship between it and CDC and the Drilling Fund under Mississippi law. *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 256 (5th Cir.1980). Evidence of the existence of an agency relationship between Forest and CDC and the Drilling Fund is overwhelming in this case. While Forest has the burden of proving that an agency relationship existed at the time the contract was executed, *Woods v. Nichols*, 416 So.2d 659, 664 (Miss.1982), such relationship need not be established by a writing. A de facto agency may be proven by the presence of three elements at the time of contracting:

(1) Manifestation by the alleged principal, either by words or conduct, that the alleged agent is employed as such by the principal;

(2) The agent's acceptance of the arrangement;

(3) The parties understood that the principal will control the undertaking.

*Engle Acoustic & Tile Co. v. Grenfell*, 223 So.2d 613, 617 (Miss.1969); *Ivey's Plumbing & Elec. Co. v. Petroleum Maintenance, Inc.*, 463 F.Supp. 543, 548 (N.D. Miss.1978).

[4] The elements of a de facto agency relationship are clearly present here. CDC and the Drilling Fund manifested their assent to the Tenneco contract from the outset. By letter dated January 7, 1982, some two months following the commencement of the take-or-pay payments, CDC sent a confirmation of agency authorization to Forest, stating in part: "This letter will confirm CDC's PC's authorization to Forest to sell our share of gas produced from the Vintage Field, Jefferson Davis County, Mississippi, to TGP (Tenneco) under the terms of the referenced gas contract." A copy of this letter was sent to Tenneco. The obvious import of the word "confirm" is that Forest had de facto authority at the time of contracting. Such confirmation is an unequivocal manifestation of CDC's authorization for Forest's agency capacity.

[5] The Drilling Fund acknowledges Forest's agency capacity in all of its communications regarding the Tenneco contract. Forest's authority to act as agent in negotiating gas purchase contracts is established in the Drilling Fund prospectus

---

**8.** Rule 17(a) provides:

Real Party In Interest. Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

sent to investors, in its Restated Articles of Partnership and in the quarterly status reports sent to its investors. In all of these communications, the Drilling Fund manifested its assent to Forest's actions on its behalf. It also appears from the record that the Drilling Fund marketed all of its gas interests through Forest; indeed, the Drilling Fund never signed any of its gas purchase contracts in its own name. Such evidence of industry custom and course of performance may be viewed as probative of the agency question and the issue of real party in interest under Rule 17(a). *See Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250 (5th Cir.1980); *Jackson Mfg. Co. of Mississippi, Inc. v. United States*, 434 F.2d 1027 (5th Cir.1970); *Mitsui & Co. v. Puerto Rico Water Resources Authority*, 528 F.Supp. 768 (D.Puerto Rico 1981). Thus, by written confirmation and by the conduct of the parties, both CDC and the Drilling Fund manifested that Forest was acting as their agent in the execution and performance of the contract. It is undisputed by the parties that Forest accepted the arrangement.

Arguing that it could not have understood that the principals would control the undertaking or that they had manifested their assent to Forest's action on their behalf, Tenneco states that it had not heard of CDC or the Drilling Fund during the contract negotiations. This contention is refuted by copies of take-or-pay payment invoices submitted to Tenneco by Forest beginning in November 1981. These invoices expressly identify the separate interests of and the percentage of the total payment going to Forest, CDC and the Drilling Fund. Pursuant to these invoices, Tenneco made advance take-or-pay payments to Forest in the amount of $9,089,-301.26, which the invoice allocated to Forest in the amount of $2,830,342.57, the Drilling Fund in the amount of $4,557,-136.28 and CDC in the amount of $1,701,-822.41. It is inconceivable that Tenneco would have disbursed funds in this amount without closely scrutinizing the specific interests dedicated to the contract, or without some knowledge and assurance that

these interests were bound to the contract by the representations of Forest. The affidavit of Charles W. Brown, one of Tenneco's negotiators who was present during the contract negotiations, to the effect that he could not "recall" mention of CDC or the Drilling Fund does not serve to refute the specific mention of those entities in the invoices paid by Tenneco and the inference to be drawn therefrom.

Thus it appears that Forest has met its burden of establishing the existence of, at the very least, a de facto agency relationship between it and CDC and the Drilling Fund at the time of contracting. The parties' course of performance over the past four years indicates a recognition on Tenneco's part that Forest was authorized to act as agent of CDC and the Drilling Fund in marketing the Vintage Field gas. This authorization was put in writing by CDC in a February 1982 letter. Forest's written authority to sell the gas owned by the Drilling Fund is contained in a series of writings authored by the Drilling Fund's managing partners and distributed to its investors. Therefore, this court is of the opinion that Forest was acting as an agent of CDC and the Drilling Fund at the time of contracting and is entitled to prosecute this action in its own name pursuant to Rule 17(a) of both the Federal and Mississippi Rules of Civil Procedure. While the mere fact that Forest fits the definition of a real party in interest under Rule 17(a) is not dispositive of this question, the fact that Forest was acting as an authorized agent for CDC and the Drilling Fund at the time of contracting means that it is entitled to prosecute the action in its own name without joining its principals under Mississippi substantive law. *See Lubbock Feed Lots*, 630 F.2d at 256–57; *see also* Restatement (Second) of Agency § 364 (1957); Miss.R.Civ.Proc. 17(a) (comment).

Tenneco's last argument on the existence *vel non* of an agency relationship raises the issue of apparent conflicts as between Forest, CDC and the Drilling Fund. The written contractual document,

the Operating Agreement controlling the relationship between Forest and CDC, specifically prohibits Forest from making any long-term commitments of CDC's gas. The Forest-Tenneco contract was for a term of ten years. Likewise, the Drilling Fund's limited partnership agreement authorizes only Forest Energy, Inc., not Forest Oil, to sell its gas. A lengthy discussion of the effect of these purportedly controlling documents is unnecessary, for even if Forest's commitments at the time of contracting were unauthorized, they were clearly ratified by both CDC and the Drilling Fund. Under Mississippi law, a party who has actual knowledge of the facts of a transaction and who accepts some benefit and an obligation to perform thereunder may affirm or ratify a prior act by another party which did not bind him but which was professedly done on his account, and the act thereby constitutes an agency relationship and is given effect as if originally authorized by him. *FMC Finance Corp. v. Reed*, 592 F.2d 238, 240 (5th Cir.1979) (applying Mississippi law); *Gulf Refining Co. v. Travis*, 29 So.2d 100, 104 (Miss.1947); Restatement (Second) of Agency § 82 (1958).

■ Tenneco contends that the ratification doctrine cannot be conscionably applied in this case because any such clear affirmance of the contract did not occur until at least January 1982, a point some six months after execution of the contract when market conditions had changed dramatically. Tenneco urges this court to deny CDC and the Drilling Fund the advantage of a hindsight decision to ratify a six-month-old contract only when it looked like the best available offer. As stated previously, this court is of the opinion, and the affidavits and deposition testimony indicate, that during contract negotiations Tenneco knew that Forest was offering to commit the gas owned by the Forest Group, and that CDC and the Drilling Fund were members of the Forest Group. Had CDC and the Drilling Fund attempted to withdraw their gas from the Forest-Tenne-

co contract at any point between June 1981 and January 1982, as Tenneco contends they were free to do, Tenneco's proper remedy would have been a suit for damages against each for breach of a contract executed by an agent clothed with apparent authority to bind their interests. A principal is bound, once an agency relationship exists, not only to those transactions entered into by an agent that are within his actual authority, but those which are within his apparent authority. *Weathersby v. Gore*, 556 F.2d 1247, 1253 (5th Cir.1977) (applying Mississippi law); *Steen v. Andrews*, 78 So.2d 881, 883 (Miss.1955).

This court cannot agree with Tenneco that CDC and the Drilling Fund were acting under an assumption that their interests were not bound by the contract executed by Forest, or that they had no intention of recognizing their obligation under the contract until it appeared that the contract offered the highest price for their gas. Throughout the relevant time period, CDC and the Drilling Fund acted consistently with the theory that Forest had actual authority to bind their interests to the June 1, 1981 contract. As a party promisee to the contract acting as an agent for disclosed principals for whose benefit, at least in part, the contract was made, Forest is entitled to prosecute this action in its own name. Restatement (Second) of Agency § 364 (1957).

*Preclusive Effect of a Judgment*

■ Rule 19(a) of the Federal Rules of Civil Procedure provides certain criteria for determining whether to allow an action to proceed or to dismiss it in the forced absence of an interested party.[9] These criteria require the court to examine *inter alia* whether continuing the action in the absence of an interested party will work a deprivation of the substantive rights of any persons already parties to the action. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). In this context, Tenneco raises the question of whether proceed-

---

9. *See supra* note 5 (text of Rule 19(a)).

ing in this action in the absence of CDC and the Drilling Fund will leave Tenneco "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" by reason of their interests in the contract under Rule 19(a)(2)(ii). In short, the fear expressed by Tenneco in its motion is that the judgment in this action will not be res judicata as to any claims which CDC or the Drilling Fund may wish to assert in the future.

The Mississippi law of res judicata and collateral estoppel has been "characterized as being as rigid as any now extant." *Stovall v. Price Waterhouse Co.*, 652 F.2d 537, 540 (5th Cir.1981). *See also* Note, Collateral Estoppel—The Multiple Tort Claimant Anomaly, 41 Miss.L.J. 497, 498 (1970). Tenneco reasons that if CDC or the Drilling Fund were to bring suit against it subsequent to conclusion of this action in a Mississippi state court—there being no diversity between the parties—the Mississippi court would apply the restrictive Mississippi law of res judicata, and as there would be no strict identity of the parties under Mississippi law, the state court action would not be barred. *See Dunaway v. W.H. Hopper & Associates, Inc.*, 422 So.2d 749 (Miss.1982). Therefore, Tenneco concludes, the failure to join CDC and the Drilling Fund as named parties herein leaves it subject to a substantial risk of incurring multiple and otherwise inconsistent obligations within the meaning of Rule 19(a)(2)(ii).

While the court has some reservations concerning the application of Mississippi law of res judicata and collateral estoppel to determine the preclusive effect of this court's judgments,[10] the parties are in substantial agreement that a Mississippi state court would apply the Mississippi law of res judicata and collateral estoppel in any subsequent action based on this contract. This court cannot disagree.

■ Forest argues, however, that even if Mississippi law of res judicata would not bar a subsequent state court action on the contract by CDC or the Drilling Fund, the Mississippi law of collateral estoppel is broad enough to preclude such further relitigation on the contract issue. In general, the Mississippi cases hold that where an issue of fact is actually litigated and resolved in one trial, and where that fact was essential to the judgment in that first trial, that determination is conclusive between the same parties *or their privies* in a subsequent suit on a different cause of action. *Mississippi Employment Security Commission v. Philadelphia Municipal Separate School District*, 437 So.2d 388, 396 (Miss.1983); *Bush Construction Co. v. Walters*, 254 Miss. 266, 179 So.2d 188, 190 (1965). Unlike the broad doctrine of res judicata, collateral estoppel applies only to questions actually litigated in the prior suit, and not to all questions which might have been litigated. *Dunaway*, 422 So.2d at 751. Forest concludes that since the

---

**10.** In *Aerojet-General Corp. v. Askew*, 511 F.2d 710 (5th Cir.), *reh. denied* 514 F.2d 1072 (5th Cir.), *cert. denied* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975), the Fifth Circuit held that federal law of res judicata applies to determine the preclusive effect of a prior judgment by a federal court sitting in diversity in a subsequent diversity action in federal court. *See also Willis v. Fournier*, 418 F.Supp. 265 (M.D.Ga.), *aff'd sub nom* 537 F.2d 1142 (5th Cir.1978) (extending the *Aerojet-General* holding to include collateral estoppel); *Stovall*, 632 F.2d at 540. The rationale underlying these holdings is that a court, whatever the source of its jurisdiction, must have the power to determine the scope of its own judgments. A state should not be allowed to nullify the judgments of a federal court, constitutionally established and given power to enforce state-created rights, through the application of such

state's more restrictive rules governing the preclusiveness of judgments. *Aerojet-General*, 511 F.2d at 516, *quoting Kern v. Hettinger*, 303 F.2d 333, 340 (2nd Cir.1962). The parties have not submitted, and the court has not found, any cases wherein a state court applied federal law of res judicata when faced with a subsequent suit filed there after a federal court sitting in diversity had entered judgment in the same action. Application of the federal law of res judicata would bar relitigation of this contract dispute by the named plaintiff, Forest, and those in privity with it, CDC and the Drilling Fund. *See Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334 (5th Cir.1982), *Hooker v. Klein*, 573 F.2d 1360 (9th Cir.), *cert. denied* 439 U.S. 932, 99 S.Ct. 323, 58 L.Ed.2d 327 (1978). Application of federal law of res judicata would thus alleviate Tenneco's fears of multiple exposure.

central issues involved in any subsequent state court suit would be identical to the issues to be litigated in this action—Tenneco's liability on the contract and the efficacy of its EGPP—CDC and the Drilling Fund would be collaterally estopped from relitigating their claims under Mississippi law.

In *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters,* 601 F.Supp. 286 (S.D.Miss.1984), this court undertook an examination of the requirement of party identity under the Mississippi law of collateral estoppel. Following an adjudication in Mississippi state court of liability between drivers of two cars involved in an automobile accident, two insurance companies brought a diversity action in this court seeking to determine their respective coverage obligations. The insurance companies were not named parties in the state court action, but they controlled the litigation. *Id.* at 289. This court, after a review of the Mississippi law of collateral estoppel, noted that "the exact parameters of the requirement for party identity in Mississippi have not been established." *Id.* Under the facts presented, this court held that the insurance companies were collaterally estopped from relitigating the liability issue because of the central role played by the companies in the prior litigation, regardless of whether they were named parties.

Thus, this court is of the opinion that the Mississippi law of collateral estoppel would bar relitigation in state court of the contract issue and Tenneco's chief defenses following a final judgment by this court. Such judgment on the merits by this court would necessarily subsume the issue of Tenneco's liability on the contract and the merit of its substantive defenses. As Tenneco's alleged liability to CDC and the Drilling Fund arises solely out of the June 1981 contract and has no independent basis which conceivably would not be litigated in this action, there is no need for this court to demand that its judgment be accorded res judicata effect as to all claims which could have been brought in this ac-

tion. Operation of the Mississippi law of collateral estoppel should provide Tenneco with sufficient protection from future litigation by these same parties to allow this action to proceed.

Furthermore, through affidavits submitted by Douglas K. Thompson, Executive Vice President of CDC, and J. Brent Garfield, counsel for Forest Energy, Inc., managing general partner of the Drilling Fund, CDC and the Drilling Fund have each stated that it "understands and agrees that any judgment in this lawsuit would be binding upon the rights of [CDC and the Drilling Fund] with respect to the subject contract." Tenneco may utilize these sworn statements by both CDC and the Drilling Fund as grounds for various affirmative defenses, including waiver and collateral estoppel, should either party pursue any further remedies in state court. The plain meaning of the statements is that no such action will follow a final judgment by this court.

For the reasons stated above, this court concludes that Tenneco will not suffer a substantial risk of incurring multiple or otherwise inconsistent obligations if this action is allowed to go forward without joining CDC and the Drilling Fund as named plaintiffs. If further problems of this nature arise during the life of this litigation, this court is authorized under Rule 19(b) of the Federal Rules of Civil Procedure to adopt protective provisions in a judgment, shape the relief or take other measures to lessen or avoid any prejudice to Tenneco. Furthermore, and in accordance with this opinion, Tenneco must be allowed full discovery from both CDC and the Drilling Fund to the same extent as if they were named party plaintiffs.

It is, therefore, ordered that Tenneco's motion to dismiss for failure to join indispensable parties pursuant to Rule 19 of the Federal Rules of Civil Procedure is denied.