Revised January 2, 2001

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-60875
_____


J R STRIPLING; ROSSON EXPLORATION COMPANY;
WILLIAM G BOWEN; BROOKHAVEN PUMP & SUPPLY
COMPANY


                              Plaintiffs - Appellants

     v.

JORDAN PRODUCTION COMPANY, LLC


                              Defendant - Appellee

-------------------------------------------------------------

J R STRIPLING; ROSSON EXPLORATION COMPANY;
WILLIAM G BOWEN; BROOKHAVEN PUMP & SUPPLY
COMPANY


                              Plaintiffs - Appellants

     v.

GUARDIAN ENERGY EXPLORATION CORPORATION;
JORDAN PRODUCTION COMPANY, LLC


                              Defendants - Appellees


_____

Appeal from the United States District Court

_____

November 29, 2000

Before KING, Chief Judge, PARKER, Circuit Judge, and FURGESON, District Judge.[*]

KING, Chief Judge:

Plaintiffs-Appellants J.R. Stripling, Rosson Exploration Company, William G. Bowen, and Brookhaven Pump & Supply Company (collectively "Stripling") appeal from a Rule 54(b) judgment entered in favor of Defendant-Appellant Guardian Energy Exploration Corporation ("Guardian"). For the following reasons, we REVERSE and REMAND for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

On November 2, 1996, Stripling and Jordan Production Company ("Jordan") executed a Letter of Intent by which Stripling proposed to sell Jordan eighty percent of Stripling's oil and gas working interest in the Flora Field Unit.[1] On January 1, 1997, the parties entered into a Purchase and Sale Agreement (the "Agreement"), which memorialized the sale of the working interest. Under the Agreement, Jordan agreed to make payments to Stripling and to undertake a four-phase "Drilling Program" with

_____

[*]    District Judge of the Western District of Texas, sitting by designation.

[1]    The Flora Field Unit is an oil and gas field containing a number of oil and gas wells, including producing and shut-in wells.

2

certain drilling requirements.[2] The parties closed on the Agreement in Mississippi on January 27, 1997. At the closing, Jordan tendered its first required payment of $1,650,000. The drilling for the first phase of the four-phase Drilling Program then commenced.

On November 12, 1997, Stripling brought its first action against Jordan ("Jordan I"), claiming that Jordan began the second phase of the Drilling Program without paying the additional $1,600,000 payment contemplated by the Agreement. In Jordan I, Stripling sought a declaratory judgment that the work for the second phase had begun and that Jordan owed Stripling $1,600,000. Stripling also sought damages for breach of contract.

During the period of discovery for Jordan I, Stripling learned that Jordan, prior to executing its Agreement with Stripling, had entered into an agreement with Guardian Energy Management Corporation ("GEMC"), the parent of Guardian. Under the agreement between GEMC and Jordan, GEMC agreed to purchase seventy-five percent of the eighty-percent working interest

---

[2] The Drilling Program was comprised of one "mandatory" drilling phase and three subsequent "optional" drilling phases. Under the first mandatory phase, Jordan was obligated to pay $1,650,000 and to drill five wells. After phase one's completion, Jordan had the option of proceeding with phase two and paying an additional $1,600,000. This option was available at the close of each subsequent phase for a total of three additional phases, with a separate required payment for each phase.

3

through Guardian, GEMC's wholly owned subsidiary. Moreover, Stripling discovered that Jordan purchased the working interest with Guardian's funds.

In response to this new information, Stripling filed "Plaintiffs' Motion for Leave to File an Amended Complaint and Join a Party-Defendant" (the "Motion to Amend"). The Motion to Amend came a month and a half after the deadline to file motions for joinder of parties as set out in the Case Management Plan Order.[3] On September 29, 1998, despite recognizing that "Rule 15 requires that leave to amend be freely given," the magistrate judge determined that the proposed amendment would be futile because Stripling "failed to point to any facts indicating that in entering the agreement with [Stripling], Jordan was acting on behalf of Guardian," and thus, "there [was] no basis for [Stripling] to recover from Guardian under the contract with Jordan." Accordingly, the magistrate judge denied Stripling's Motion to Amend.

---

[3] Under the Case Management Plan Order, the deadline for motions for joinder was April 17, 1998. Stripling filed its Motion to Amend on June 29, 1998. Stripling contends that it filed the motion the moment it discovered that "Jordan bought 75% of the 80% working interest for and on behalf of Guardian." The record reveals that Stripling served discovery requests on Jordan in both February and April 1998 and that with each request, Jordan responded that it would produce the requested documents. However, Jordan did not respond with the relevant documents until May 29, 1998. The December 1996 letter agreement between Jordan and Guardian was within those documents.

As a result of the magistrate judge's order disallowing joinder of Guardian, on October 6, 1998, Stripling filed a second suit against Jordan ("Jordan II"), which named both Jordan and Guardian as party defendants.  In addition, on October 14, 1998, Stripling filed objections to the magistrate judge's order and asked the district court to set it aside.  The district court consolidated Jordan I and Jordan II.  On November 23, 1998, Guardian filed a Rule 12 motion to dismiss on the ground that the magistrate judge's ruling in Jordan I--that Guardian could not be liable to Stripling--collaterally estopped Stripling from raising the issues against Guardian in Jordan II.

On September 30, 1999, the district court issued two orders. The first order denied Stripling's motion to set aside the magistrate judge's order, which found that joining Guardian would be futile.  The second district court order dismissed Guardian from the consolidated suit on two grounds: (1) Stripling's claims were barred by the doctrine of collateral estoppel as a result of the magistrate judge's order; and (2) the court lacked personal jurisdiction over Guardian.  On November 30, 1999, the district court entered its final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

Stripling timely appealed the district court's final judgment.  On this appeal, we must address three issues.  First, Stripling contends that the magistrate judge's order did not preclude the claims against Guardian.  Second, Stripling argues

5

that it presented a prima facie case of personal jurisdiction over Guardian based upon either the "contract prong" or the "doing-business prong" of the Mississippi long-arm statute. Finally, Stripling asserts that the district court abused its discretion in upholding the magistrate judge's finding of futility.

## II. STRIPLING IS NOT COLLATERALLY ESTOPPED FROM RAISING THE ISSUES IN <u>JORDAN II</u>

In <u>Jordan II</u>, the district court dismissed Guardian, concluding that Stripling was collaterally estopped by the magistrate judge's order in <u>Jordan I</u> from raising its theories of recovery against Guardian. We conclude that the district court erred in finding that Stripling was collaterally estopped.

### A. <u>Standard of Review</u>

This court reviews de novo a district court's dismissal under Rule 12(b)(6). See <u>Shipp v. McMahon</u>, 199 F.3d 256, 260 (5th Cir. 2000). In addition, "[t]he application of collateral estoppel is a question of law that we review de novo." <u>United States v. Brackett</u>, 113 F.3d 1396, 1398 (5th Cir. 1997).

### B. <u>Discussion</u>

"'[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" <u>RecoverEdge L.P. v. Pentecost</u>, 44 F.3d 1284, 1290 (5th Cir. 1995)

(quoting Ashe v. Swenson, 397 U.S. 436, 443 (1970)). Under federal law, collateral estoppel encompasses three elements: "'(1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action.'" Next Level Communications LP v. DSC Communications Corp., 179 F.3d 244, 250 (5th Cir. 1999) (quoting RecoverEdge L.P., 44 F.3d at 1290).

We find that the district court erred in concluding that Stripling was precluded by the magistrate judge's order in Jordan I from raising its claims against Guardian in Jordan II. The threshold inquiry, which is the dispositive inquiry in this analysis, is whether we are considering "an issue of ultimate fact [that has] been determined by a valid and final judgment."[4] RecoverEdge L.P., 44 F.3d at 1290 (emphasis added). We conclude that the magistrate judge's order did not qualify as a final judgment, such that it would provide a preclusive collateral estoppel effect. See Alpine View Co. v. Atlas Copco AB, 205 F.3d 208, 219-20 (5th Cir. 2000) (finding that a magistrate judge's discovery orders "are not final orders under 28 U.S.C. § 1291"); Reynaga v. Cammisa, 971 F.2d 414, 416 (9th Cir. 1992) (finding

---

[4] Because we find that the magistrate judge's order did not qualify as a final judgment for purposes of collateral estoppel, we need not consider whether the three factors of collateral estoppel have been met.

7

that a magistrate judge's order under 28 U.S.C. § 636(b) is not final); <u>Glover v. Ala. Bd. of Corrections</u>, 660 F.2d 120, 122 (5th Cir. Unit B Oct. 1981) ("[28 U.S.C. § 636(b)] does not grant to a magistrate judge the authority to render a final judgment. Only a district court can make a magistrate's decision final, and therefore appealable." (footnote omitted)).[5]

A magistrate judge's order issued under 28 U.S.C. § 636(b)(1)(A) or § 636(b)(1)(B) only becomes final once the district court makes it final. <u>See</u> <u>Alpine View Co.</u>, 205 F.3d at 220; <u>Glover</u>, 660 F.2d at 122. In the present case, it was not until after the district court ruled on the issues in <u>Jordan II</u> that it "direct[ed] the entry of a final judgment on . . . the Order Denying Plaintiffs' Motion To Set Aside Magistrate's Order dated September 30, 1999." From this set of circumstances, we conclude that the magistrate judge's order was not final at the time the district court rendered its Memorandum Opinion in <u>Jordan II</u>. Accordingly, the district court erred in finding that Stripling was collaterally estopped from raising the issues in <u>Jordan II</u>.

---

[5] Both Jordan and Stripling consented to referral under 28 U.S.C. § 636(c); however, the district court never formally referred the case to the magistrate judge under that subsection. As such, the magistrate judge's order was an order under 28 U.S.C. § 636(b).

8

**III. STRIPLING PRESENTED A PRIMA FACIE CASE OF PERSONAL**

**JURISDICTION OVER GUARDIAN**

Stripling asserts that the district court erred in holding that the court did not have personal jurisdiction over Guardian. Stripling contends that it set out a prima facie case for personal jurisdiction under both the "contract prong" and "doing-business prong" of Mississippi's long-arm statute. See MISS. CODE ANN. § 13-3-57 (2000).[6] We conclude that Stripling met the requirement of a prima facie showing, and therefore, the district court erred in dismissing Guardian for lack of personal jurisdiction at this stage in the proceedings.

### A. Standard of Review

We review de novo a dismissal for lack of personal jurisdiction. See Alpine View Co. v. Atlas Copco AB, 205 F.3d

---

[6] Mississippi's long-arm statute provides in relevant part:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of the state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, . . . or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

MISS. CODE ANN. § 13-3-57.

9

208, 214 (5th Cir. 2000); <u>Jobe v. ATR Mktg., Inc.</u>, 87 F.3d 751, 753 (5th Cir. 1996).

### B. <u>Discussion</u>

Under the Federal Rules of Civil Procedure, a federal court sitting in diversity may exercise jurisdiction over a nonresident corporate defendant only if permitted by state law. <u>See</u> FED. R. CIV. P. 4(e)(1), 4(h)(1), 4(k)(1); <u>see also</u> <u>Alpine View Co.</u>, 205 F.3d at 214. We conduct a two-prong analysis to determine if personal jurisdiction is proper over a nonresident.[7] <u>See</u> <u>Latshaw v. Johnston</u>, 167 F.3d 208, 211 (5th Cir. 1999); <u>Jobe</u>, 87 F.3d at 753. First, we determine whether the long-arm statute of the forum state confers personal jurisdiction over the defendant. <u>See</u> <u>Latshaw</u>, 167 F.3d at 211. Second, we ask whether the "exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." <u>Id.</u>

"When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts[.]" <u>Id.</u>; <u>see also</u> <u>Bullion v. Gillespie</u>, 895 F.2d 213, 217 (5th Cir. 1990); <u>Thompson v. Chrysler Motors Corp.</u>, 755 F.2d

---

[7] We note that Mississippi's long-arm statute is not coextensive with due process. <u>See</u> <u>Tichenor v. Roman Catholic Church</u>, 32 F.3d 953, 958 (5th Cir. 1994). Therefore, we address each prong separately. <u>See</u> <u>Coats v. Penrod Drilling Corp.</u>, 5 F.3d 877, 882 n.5 (5th Cir. 1993).

1162, 1165 (5th Cir. 1985); DeMelo v. Toche Marine, Inc., 711 F.2d 1260, 1270-71 (5th Cir. 1983). Therefore, the plaintiff need only present a prima facie case of personal jurisdiction to satisfy its burden. See Bullion, 895 F.2d at 217. From our review of the record, taking as true the uncontroverted allegations and resolving any factual conflicts in favor of Stripling, we conclude that Stripling met its burden of establishing the minimum prima facie showing that Jordan was acting in concert with Guardian when it entered the Agreement with Stripling.[8]

Regarding the first prong of our personal jurisdiction inquiry, a nonresident who makes a contract with a resident of the state to be performed in whole or in part within the state is within the reach of the long-arm statute. See MISS. CODE ANN. § 13-3-57; see also Cycles, Ltd. v. W.J. Digby, Inc., 889 F.2d 612, 617 (5th Cir. 1989). Therefore, the question presented is: Under the facts of this case, did Stripling present a prima facie case that Guardian entered a contract with a Mississippi

---

[8] We recognize that evidence adduced at trial may mandate a different conclusion; however, at this stage of the proceedings, all that is required of Stripling is to meet the low threshold of a prima facie showing. See Felch v. Transportes Lar-Mex SA DE CV, 92 F.3d 320, 326 (5th Cir. 1996); Bullion, 895 F.2d at 217.

11

resident, which was to be performed in whole or in part within Mississippi?[9]

Stripling and Jordan entered into a contract for the sale of a working interest in the Flora Field Unit, which is situated in Mississippi.[10] Under that contract, Jordan was to complete the operations of at least one phase of the Drilling Program. It is not disputed that this contract, at least to the extent that it exists between Stripling and Jordan, is a contract to be performed in whole or in part in Mississippi because Jordan had duties of performance in Mississippi. However, Stripling argues that Jordan entered the contract with Stripling on behalf of itself and Guardian, who financed and purchased seventy-five percent of the eighty-percent working interest in the Field. Stripling offers up the theories of agency, joint venture, and assignment in order to connect Guardian with the contract. Guardian argues in response that its role in this transaction is that of a mere passive investor. We find that, under the facts presented in this case, a prima facie showing exists which

---

[9] Because we find that Stripling presented a prima facie case under the "contract prong" of the Mississippi long-arm statute, we need not address its "doing-business" argument.

[10] "A 'working interest' ownership is the ownership of oil, gas, and mineral leases. This interest creates in the owner the exclusive right and implied obligation to explore for and develop those minerals by drilling." TXG Intrastate Pipeline Co. v. Grossnickle, 716 So. 2d 991, 1007 (Miss. 1997).

12

demonstrates that Guardian's role may have exceeded that of a mere investor.

An agency relationship may be express or de facto. A de facto agency may be proven by the presence of three elements at the time of contracting: (1) "[m]anifestation by the alleged principal, either by words or conduct, that the alleged agent is employed as such by the principal," (2) "[t]he agent's acceptance of the arrangement," and (3) "[t]he parties understood that the principal will control the undertaking." Forest Oil Corp. v. Tenneco, Inc., 626 F. Supp. 917, 921 (S.D. Miss. 1986) (citing Engle Acoustic & Tile, Inc. v. Grenfell, 223 So. 2d 613, 617 (Miss. 1969)). The question whether an agency relationship has been created is generally one of fact:

> [W]hether an agency has in fact been created is to be determined by the relations of the parties as they exist under their agreements or acts, with the question being ultimately one of intention. . . . [I]f relations exist which will constitute an agency, it will be an agency whether the parties understood the exact nature of the relation or not. Moreover, the manner in which the parties designate the relationship is not controlling, and if an act done by one person in behalf of another is in its essential nature one of agency, the one is the agent of such other notwithstanding he is not so called.

Engle Acoustic & Tile, Inc., 223 So. 2d at 617-18 (internal quotations omitted) (emphasis omitted) (quoting 3 AM. JUR. 2D Agency § 21 (1962)).

Resolving all factual conflicts in favor of Stripling, the evidence demonstrates that before the final contract between

13

Jordan and Stripling was signed, Jordan agreed to purchase for Guardian seventy-five percent of the eighty-percent interest that Jordan was acquiring from Stripling. As such, prima facie evidence exists that Jordan may have been acting on behalf of Guardian, an undisclosed principal. See Bailey v. Worton, 752 So. 2d 470, 475-76 (Miss. Ct. App. 1999) ("Though an agent is personally answerable if at the time of making the contract in his principal's behalf he failed to disclose the fact of his agency, the other party to the contract may proceed against the agent or against the principal.").[11]

The record reveals that there existed an ongoing relationship between Jordan and Guardian, whereby Jordan had an obligation to offer oil and gas interests to Guardian or any other Guardian entity before it made any purchases. Under this relationship, after entering the letter of intent with Stripling on November 2, 1996, Jordan went to Guardian and offered to buy for Guardian a percentage of the working interest. Guardian

---

[11] Citing to the Restatement of Agency and cases involving master-servant personal injury cases, Guardian's primary argument against this conclusion is that Guardian's control over Jordan is essential for a finding of agency. See RESTATEMENT (SECOND) OF AGENCY § 1 (1958). Guardian argues that certain letters between Jordan and Guardian demonstrate that Guardian had the right to choose not to participate in the drilling of the wells, not a right to control the project.

"The control of the principal does not, however, include control at every moment; its exercise may be very attenuated and, as where the principal is physically absent, may be ineffective." Id. § 14 cmt. a. We find that sufficient control by Guardian exists to satisfy the prima facie showing necessary at this stage of the proceedings.

14

agreed, and Jordan and Guardian entered a letter agreement on December 6, 1996, under which Guardian would pay the purchase price of seventy-five percent of the eighty-percent interest. On January 1, 1997, Jordan and Stripling entered into the proposed purchase and sale agreement, and the property was purchased with Guardian's money. Before entering the agreement with Jordan, Guardian hired a natural resource consultant and a petroleum engineering consultant to review the project.

Evidence exists which demonstrates that Jordan was holding title for Guardian and that Guardian could demand and receive an assignment whenever it deemed appropriate. Deposition testimony revealed that there was "[n]o particular reason" that Guardian was not made a party to the Jordan/Stripling contract, other than they "chose to do it all in Jordan Production Company." The December 6, 1996 agreement between Jordan and Guardian provided that Guardian "shall have the right to participate in drilling, completions, re-works, etc."

Finally, in a May 5, 1998 letter from Jordan to Stripling regarding reworking wells after Stripling filed suit, Jordan admitted that it was writing on behalf of itself and "as <u>agent</u> for others" and intended to rework the wells "individually and as <u>agent</u> for the remaining parties" (emphasis added). We believe this evidence is sufficient for a prima facie case that Guardian entered into a contract through its agent Jordan to be performed

15

in whole or in part in Mississippi, thus placing Guardian within the reach of the state's long-arm statute.

Regarding the second prong of our personal jurisdiction inquiry, a court may only exercise personal jurisdiction over a nonresident if that exercise of jurisdiction comports with due process. Jurisdiction may be asserted only in situations in which the nonresident has such minimum contacts with the forum state that its being required to defend a suit in the forum state would not "offend 'traditional notions of fair play and substantial justice.'" Latshaw, 167 F.3d at 211 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The focus here is on whether the nonresident "purposefully availed" itself of the benefits of the forum state. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

"A state exercises 'specific jurisdiction' over a nonresident defendant when the lawsuit arises from or relates to the defendant's contact with the forum state." Latshaw, 167 F.3d at 211; Ruston Gas Turbines, Inc. v. Donaldson Co., 9 F.3d 415, 416 (5th Cir. 1993). Moreover, a defendant's single act can be sufficient to confer personal jurisdiction "if that act gives rise to the claim being asserted," Ruston Gas Turbines, Inc., 9 F.3d at 416, so long as the defendant "reasonably anticipate[s] being haled into court" in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

16

We find that Guardian had sufficient contact, on the present record, to justify the district court's exercise of specific jurisdiction. Because we conclude that Stripling established a prima facie case of agency to justify the reach of the long-arm statute, we find that such agency permits a conclusion that Guardian entered into a contract with a Mississippi resident and could have reasonably anticipated being haled into Mississippi court should a suit arise from the Flora Field contract. Such an exercise of personal jurisdiction based upon Guardian's specific contact with the forum state does not offend "traditional notions of fair play and substantial justice." As such, Stripling met its prima facie burden, and the district court erred in dismissing Guardian for lack of personal jurisdiction.

## IV. THE DISTRICT COURT ABUSED ITS DISCRETION IN

### JORDAN I IN FINDING FUTILITY

In order to resolve all of the contested issues on this appeal, we must consider Stripling's contention that the district court erred in affirming the magistrate judge's decision that the joinder of Guardian would have been futile. In deciding Stripling's Motion to Amend, the magistrate judge concluded that there was no basis for liability against Guardian; therefore, its joinder would have been futile. The district court upheld this conclusion, stating that it was not clearly erroneous. Stripling argues that under the considerations of Federal Rule of Procedure

17

15(a),[12] Guardian should have been joined as a party.  Therefore, Stripling contends that the magistrate judge abused its discretion in precluding Guardian's joinder.  We agree.

### A. Standard of Review

We review a district court's denial of leave to amend under Rule 15(a) for an abuse of discretion.  See Whitmire v. Victus Ltd., 212 F.3d 885, 887 (5th Cir. 2000); Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co., 195 F.3d 765, 770 (5th Cir. 1999).  The district court's discretion is limited, however, by Rule 15(a), which states that leave to amend must be "freely given when justice so requires."  FED. R. CIV. P. 15(a); see also Foman v. Davis, 371 U.S. 178, 182 (1962); Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 524 (5th Cir. 1994).  "In the context of motions to amend pleadings, 'discretion' may be misleading, because FED. R. CIV. P. 15(a) 'evinces a bias in favor of granting leave to amend.'"  Martin's Herend Imports, Inc., 195 F.3d at 770 (quoting Dussouy v. Gulf Coast Inv. Corp., 660 F.2d

---

[12]  Rule 15(a) provides in relevant part:

> Amendments.  A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served.  Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

FED. R. CIV. P. 15(a).

18

594, 597 (5th Cir. 1981)).  Unless there is a "substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial."  Dussouy, 660 F.2d at 598; Martin's Herend Imports, Inc., 195 F.3d at 770.

## B. Discussion

It is within the district court's discretion to deny a motion to amend if it is futile.  See Martin's Herend Imports, Inc., 195 F.3d at 771; Leffall, 28 F.3d at 524.  While this court has not specifically defined "futility" in this context, we join our sister circuits that have interpreted it to mean that the amended complaint would fail to state a claim upon which relief could be granted.  See, e.g., Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000); Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1085 (7th Cir. 1997); Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996); Rudolph v. Arthur Anderson & Co., 800 F.2d 1040, 1041-42 (11th Cir. 1986).  As these courts have done, to determine futility, we will apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)."  Shane, 213 F.3d at 115; Gen. Elec. Capital Corp., 128 F.3d at 1085; Glassman, 90 F.3d at 623.

"The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief."  Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) (internal quotations omitted) (quoting Lowrey v. Tex.

19

A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997)); Beanal v. Freeport-McMoran, Inc., 197 F.3d 161, 164 (5th Cir. 1999).  The court "may not dismiss a complaint under [R]ule 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Shipp v. McMahon, 199 F.3d 256, 260 (5th Cir. 2000) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Beanal, 197 F.3d at 164.

The magistrate judge held that joining Guardian as a defendant would have been futile because Stripling "failed to point to any facts indicating that in entering the agreement with [Stripling], Jordan was acting on behalf of Guardian, rather than on its own behalf, and pursuant to Guardian's direction and control."  Because of this lack of facts, the magistrate judge concluded there was no basis for Stripling to recover from Guardian.  We disagree.

Under the low threshold by which we evaluate a dismissal under Rule 12(b)(6) and resolving any doubt in favor of Stripling, we find that Stripling adduced facts in support of its claim that would entitle it to relief.  As discussed in the prior section and without repeating the significant facts, Stripling produced sufficient evidence for a claim of relief against Guardian as an undisclosed principal in order to survive dismissal.

We find these facts sufficient to overcome a Rule 12(b)(6) dismissal motion.  Accordingly, we conclude that the district court abused its discretion in <u>Jordan I</u> in finding futility.

## V. CONCLUSION

For the foregoing reasons, we REVERSE and REMAND for further proceedings consistent with this opinion.  Costs shall be borne by the Appellees.